OPINION
CHUTICH, Justice.
Appellant Kristyn Nicole Schouweiler was charged with felony issuance of a dishonored check, Minn.Stat. § 609.535, subd. 2 (2014), when her check for past-due property taxes was returned for insufficient funds. The district court dismissed the criminal complaint, concluding that Schouweiler’s check met the statutory exception for “a check given for a past consideration,” id., subd. 5 (2014). The court of appeals reversed, and Schouweiler petitioned for review. We conclude that “a check given for a past consideration” means a check given for a good or service that was received in the past. Because Schouweiler’s check for past-due property taxes was given, in part, for government services provided.in the previous year, her check was “given for a past consideration.” Accordingly, we reverse the. decision of the court of appeals..
I.
In February 2015, Schouweiler issued a check in the amount of $1,969.07 to the Wabasha County Auditor/Treasurer for past-due property taxes payable in 2014. The check was not honored by Schouweiler’s bank, which returned it for insufficient funds. The County Auditor/Treasurer mailed a notice to Schouweiler, informing her that she had 5 days to make a valid payment, but she failed to do so.
Schouweiler was charged with issuance of a dishonored check, Minn.Stat. § 609.535, subd. 2. Schouweiler challenged the probable cause underlying the complaint and moved to dismiss it, arguing that her check fit within the statutory exception for “a check given for a past consideration,” id., subd. 5. After a hearing, the district court dismissed the criminal complaint, holding that Schouweiler’s check for past-due property taxes was “a check given for a past consideration,” id., because there was no contemporaneous exchange of goods or services for the check. *24 It reasoned that the purpose of the dishonored-check statute was “to protect the person who would not have given the goods to the defendant but for the contemporaneous delivery of the check.”
The court of appeals reversed. Observing that the phrase “past consideration” has a special meaning in contract law, the court of appeals held that the past-consideration exception “refers to a promise to pay that is unenforceable for lack of adequate' consideration.” State v. Schouweiler, No. A15-1461, 2016 WL 102578, at *2-3 (Minn.App. Jan. 11, 2016). Because Schouweiler wrote the check to fulfill a statutory obligation to pay taxes, and not to honor an unenforceable contractual obligation, the court of appeals concluded that the check was not “given for a past consideration.” Id. at *3. Schouweiler sought review by this court, once again contending that her issuance of a check for past-due property taxes was “a check given for a past consideration.” We granted review.
II.
We begin with an overview of the statute. The dishonored-check statute provides: “Whoever issues a check which, at the time of issuance, the issuer intends[1] shall not be paid, is guilty of issuing a dishonored check.” Minn.Stat. § 609.535, subd. 2. But the Legislature created exceptions to the dishonored-check statute: “This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check or a check issued to a fund for employee benefits.” Id., subd.-5.
Schouweiler’s sole contention is that her check was “given for a past consideration” and is therefore subject to the exception in the dishonored-check statute. To resolve this issue, first we must decide whether the phrase “past consideration” has a plain or technical meaning. Then we must decide whether a check given to pay a property tax obligation is “given for a past consideration.”
A.
We begin with the phrase “past consideration.” Schouweiler argues that “past consideration” plainly refers to a valuable good or service that the check issuer received in the past. Quoting a Wisconsin Court of Appeals decision that interprets a dishonored-check statute nearly identical to Minnesota’s statute, Schouweiler argues that the past-consideration exception includes “checks given either for services already performed or for goods already received.” See State v. Archambeau, 187 Wis.2d 502, 523 N.W.2d 150, 151-52 (Wis.Ct.App.1994) (quoting 66 Op. Wis. Att’y Gen. 168, 174 (1977)).
The State contends that the phrase “past consideration” is a contractual term of art. Because Schouweiler’s tax payment arises from a statutory obligation, not a contractual one, the State argues, her check could not have been “given for a past consideration.”
The meaning of the past-consideration exception is a question of law, which we review de novo. Ekdahl v. In-dep. Sch. Dist. No. 213, 851 N.W.2d 874, *25 876 (Minn.2014). The purpose of statutory interpretation is to -ascertain the intent of the Legislature. Christianson v. Henke, 831 N.W.2d 532, 536 (Minn.2013). We generally interpret -words and phrases according to their common and ordinary meaning, but we interpret technical words and phrases according to their special, technical meaning. Staab v. Diocese of St. Cloud, 813 N.W.2d 68, 72 (Minn.2012); accord MinmStat. § 645.08(1) (2014). To decide whether words in a statute have a technical meaning or an ordinary meaning, we consider the context in which the phrase appears. State v. Rick, 835 N.W.2d 478, 484 (Minn.2013). We interpret a statute “as a whole so as to harmonize and give effect to all its parts, and where possible, no word, phrase, or sentence will be held superfluous, void, or insignificant.” Jackson v. Mortg. Elec. Registration Sys., Inc., 770 N.W.2d 487, 496 (Minn.2009) (quoting In re United-Health Grp. Inc., 754 N.W.2d 544, 563 (Minn.2008)); see also Minn.Stat. § 645.16 (2014).
In ordinary, nonlegal speech, the word “consideration” means a payment given as compensation for a good or service. See Webster’s Third New International Dictionary of the English Language Unabridged 484 (2002) (defining “consideration,” in part, as “something given as recompense: as ... payment, reward”); see also .The American Heritage Dictionary of the English Language 392 (5th ed.2011) (defining “consideration,” in part, as “[pjayment given in exchange for a service rendered; recompense”). “Past,” of course, refers to something that has “existed or occurred in an earlier time.” The American Heritage Dictionary 1290. “A check given for a past consideration” would then refer, according to its common and ordinary meaning, to a check given as payment for something of value received in the past.
As a contractual term of art, however, the phrase “past consideration” has a different meaning. “Consideration” is an act or forbearance that induces a contractually binding promise. See Consideration, Black’s Law Dictionary (10th ed.2014). But when the act or forbearance was given before the return promise was made, the act or forbearance is called “past consideration.” See id. Because a “past consideration” . does not actually induce a return promise, a promise given for “past consideration” is not legally binding. See 4 Richard A. Lord, Williston on Contracts § 8:11 (4th ed.2008); see also Lamprey v. Lamprey, 29 Minn. 151, 155, 12 N.W. 514, 515 (1882).
The surrounding text of subdivision 5 shows that the Legislature intended for the phrase “past consideration” to be given its ordinary meaning, not its technical meaning. Stated in full, subdivision 5 provides: “This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check or a check issued to a fund for employee benefits.” Minn.Stat. § 609.535, subd. 5 (emphasis added).
Subdivision 5 has two layers. The first clause—“[t]his section does not apply to a postdated check or to a check given for a past consideration”—creates an exception to the dishonored-check statute. Id. The second clause—“except a payroll check or a check issued to a fund for employee benefits”—creates an exception to the exception. Id. Consequently, a check issued for payroll or benefits first must qualify as a “check given for past consideration” to avoid rendering the payroll-check and employee-benefit-check exceptions mere sur-plusage.
If we interpreted the phrase “past consideration” according to its technical meaning, the exceptions for “a payroll check” and “a check issued to a fund for *26 employee benefits” would make little sense. An employee’s pay and benefits are typically bargained for when an employment agreement is made and, therefore, are not “past consideration” under contract law.[2] We cannot give effect to each word of the statute unless the phrase “past consideration” is interpreted according to its common and ordinary meaning. Accordingly, we hold that the exception for “a check given for a past consideration” in subdivision 5 refers to any check given in payment for a good or service that was received in the past. Such a check does not give rise to criminal liability under the dishonored-check statute.
This interpretation of the phrase “a past consideration” is supported by a decision of the Wisconsin Court of Appeals that discusses several Wisconsin Attorney General opinions that interpret an almost identical statutory exception. Archambeau, 523 N.W.2d at 151; see Wis. Stat. Ann. § 943.24(4) (West 2015) (“This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check.”).[3] Noting that a payroll check “usually follows an agreement as to the terms of employment, form of compensation, and the actual performance of the work,” 66 Op. Wis. Att’y Gen. 168, 175 (1977), the Wisconsin Attorney General concluded that the phrase “past consideration” was not a legal term of art, but rather covered payments for “services already performed or goods already received, or for a past due obligation.” Id, at 174.
Here the State argues, and the court of appeals concluded, that interpreting the phrase “past consideration” according to its common and ordinary meaning effectively eliminates criminal liability for checks that are issued for delayed or past-due payments, which is an absurd result. Schouweiler, 2016 WL 102578, at *3. We disagree.
When construing a statute, we presume that the Legislature did not intend an absurd or unreasonable result. Minn. Stat. § 645.17(1) (2014). But this canon is *27 not applicable “except in an exceedingly rare case in which the plain meaning of the statute ‘utterly confounds’ the clear legislative purpose of the statute.” Schatz v. Interfaith Care Ctr., 811 N.W.2d 643, 661 (Minn.2012) (quoting Weston v. McWilliams & Assocs., Inc., 716 N.W.2d 634, 639 (Minn.2006)).[4]
Our interpretation of the dishonored-check statute does not confound any clear legislative purpose. When the Legislature enacted the dishonored-check statute, including the past-consideration exception, it may have intended to criminally punish only the issuance of a worthless check that actually induced the other party to provide a good or service to the issuer of the check. The Legislature may have concluded that the physical presence of a check at the time of exchange would be more likely to induce the immediate delivery of goods or services than a mere promise by the issuer to write a check at a later date.[5]
Moreover, when someone writes a worthless check to pay a debt already owed, the relationship of the parties does not change; the party who wrote the check still owes the payment. In this case, the dishonored check that Schouweiler issued did not change the position of the government. The government remained legally entitled to Schouweiler’s past-due, taxes, just as it was before the-check issued. And the government retained the same legal recourse against Schouweiler for failure to pay her property taxes that, existed before the check was dishonored.[6] The State’s absurd-results argument is insufficient to overcome the common and ordinary meaning of the phrase “past consideration,”
B.
Having decided that the exception for “a check given for a past consideration” refers to a check that was given for goods or services received in the past, the question remains whether Schouweiler’s check fits the past-consideration exception. Property owners have a statutory, obligation, to pay taxes, see Minn.Stat, § 272.01, subd. 1 (2014), and it is undisputed that tax payments fund government services. Schouweiler argues that her check for property taxes reimbursed the county for government services received only during the previous year. The State contends that county services are received on an ongoing basis and not entirely received in the past.
The State is correct that a payment for property taxes funds both past and future government services. See Minn. Dep’t of *28 Revenue, Understanding Property Taxes: Property Tax Fact Sheet 12a (2011), http:// ■www.revenue.state.mn.us/propertytax/fa ctsheets/factsheet_2a.pdf (describing the process of budgeting and calculating property taxes). But the Legislature created an exception for checks issued for “a> past consideration.” Minn.Stat. § 609.535, subd. 5. When used before a noun or a noun phrase, the word “a” denotes “a single but unspecified person or thing.” The American Heritage Dictionary at 1. The use of the word “a”- before the phrase “past consideration” shows that the Legislature required only a good or a service to have been received in the past for a check to be exempt from criminal liability under the dishonored-check statute. Because some of the government services funded by a property tax payment had already occurred by the time Schouweiler’s check for past-due taxes issued, her check was “a check given for a past consideration.”
The dissent maintains that property taxes are not paid in exchange for services, but rather are paid to fund local government, which then distributes the funds to pay for services that benefit the public as a whole. To be sure, a landowner’s property tax burden is not calculated by the precise amount of - services that she receives individually from the government.
But by March 31 every year, the County Treasurer’s Office mails a tax statement to each property owner that provides an itemized list of the property tax due to taxing authorities.' Minn. Dep’t of Revenue, supra, at 2. This statement informs taxpayers that they are paying a specific amount of money for the county, an amount for the city (for those who live in one), and an amount for local schools, among other items. Id. A layperson may reasonably view the property tax payment as confirming a payment of money for, among other things, a variety of received and soon-to-be-received public services.
Because property taxes may be reasonably understood to support public services, and Schouweiler presumably received at least some of these "services—fire and police protection or snow removal, for example—by the time she issued her check for the past year’s property taxes, her check was given for a past consideration. Accordingly, Schouweiler’s check was subject to the exception in Minn.Stat. § 609.535, subd. 5.[7]
Because Schouweiler’s check for property taxes was “a check given for a past consideration,” the district court correctly dismissed the criminal complaint. We therefore reverse the court of appeals’ decision.
Reversed.
McKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

. The dishonored-check statute is an atypical criminal statute because it allows the fact-finder to infer intent when there is "proof that, at the time of issuance, the issuer did not have sufficient funds or credit with the draw-ee and that the issuer failed to pay the check within five business days” after notice was mailed to the issuer. Minn.Stat. § 609.535, subd. 3(2) (2014). We have said that the defendant must be given the opportunity to rebut such a presumption at trial, State v. Williams, 324 N.W.2d 154, 160 (Minn. 1982), but we have never directly addressed the constitutionality of allowing the fact-finder to infer intent from a presumption, see id. at 160 n. 4.

. The dissent suggests the possibility of payroll or employee benefit payments that are not bargained for, such as a holiday bonus or a spontaneous profit share. These kinds, of checks would fall outside the scope of the statute. The plain meaning of "a payroll check or a check issued to a fund for employee benefits” requires a scheme of compensation. The American Heritage Dictionary of the English Language 1296 (5th ed.2011) (defining “payroll,” in part, as "[a] list of employees receiving wages or salaries, with the amounts due to each” (emphasis added)); id, at 168 (defining “benefit,” in part, as “[a] form of compensation ,.. provided to employees in addition to wages or salary as part of an employment arrangement” (emphasis added)). In these definitions, the checks are issued for payroll or benefits owed to the employee. Thus, a check meeting the contractual definition of “past consideration,” such as a gratuitous holiday bonus, would not fall within the plain meaning of a "payroll check.”

. The Wisconsin statute was enacted in 1955. Act of Dec. 24, 1955, ch. 696, 1955 Wis. Sess. Laws 974, 992 (codified as amended at Wis. Stat. Ann, § 943.24 (West 2015)). When the Minnesota Legislature first enacted the statute at issue in this case in 1963', it used an identical exception. Compare Act of May 17, 1963, ch. 753, 1963 Minn. Laws 1185, 1220 (codified as amended at Minn.Stat. § 609.535, subd. 5 (2014)) ("This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check.”), with Act of Dec. 24, 1955, 1955 Wis. Sess. Laws at 993 (“This section does not apply to a postdated check or to a check given for a past consideration, except a payroll check.”). The employee benefit fund exclusion, was added to Minnesota’s law in 1967. Act of May 16, 1967, ch. 466, § 1, 1967 Minn. Laws 996, - 996-97 (codified as amended at. Minn.Stat. § 609.535, subd.- 5 (2014)). From the timing and the identical statutory language, we can reasonably infer that the Minnesota statute was modeled after Wisconsin’s statute.

. This canon has been dispositive only once in our jurisprudence. Schatz, 811 N.W.2d at 651; see Wegener v, Comm'r of Revenue, 505 N.W.2d 612 (Minn.1993).

. The State contends that our interpretation incorrectly reads the element of swindle into the dishonored-check statute and, therefore, conflates the crime of issuing a dishonored 1' check with the crime of theft-by-check, Minn. Stat. § 609.52, subd. 2(a)(3)(i) (2014). The State is incorrect. The two crimes have different intent requirements, State v. Cox, 798 N.W.2d 517, 519 (Minn.2011) (citing State v. Roden, 384 N.W.2d 456, 457 (Minn.1986)), and our interpretation of the phrase “past consideration" does not affect the element of intent.

.Several statutes give the government specific recourse when a taxpayer fails to pay property taxes. See Minn.Stat. § 279,01, subd. 1 (2014) (imposing penalties for delinquent property taxes); Minn.Stat. §§ 280.001-,43 (2014) (providing for forfeiture of real estate due to unpaid taxes). Notably, these remedies do not include criminal prosecution. Compare Minn.Stat. § 289A.63, subd. 1 (2014) (imposing criminal penalties for tax evasion), with Minn.Stat. § 289A.01 (2014) (stating that chapter 289A applies to laws administered under various chapters without listing the chapters ■ governing delinquent property taxes).

. Schouweiler also argued that the court of appeals' interpretation of the dishonored-check statute is contrary to public policy, citing the provision of the Minnesota Constitution that prohibits imprisonment for a debt except in cases of fraud. See Minn. Const. art. I, § 12. Because Schouweiler's check meets the statutory exception, we need not address this public policy argument.