VERMILLION STATE BANK,
Plaintiff-Petitioner
Below,

Faegre Baker Daniels, Respondent,

v.

STATE of Minnesota, BY its DEPART-
MENT OF TRANSPORTATION,
Appellant.

A16-1284

Court of Appeals of Minnesota.

Filed April 17, 2017

David M. Jann, Bruce Jones, Faegre Baker Daniels LLP, Minneapolis, Minnesota (for respondent).

Lori Swanson, Attorney General, Stephen D. Melchionne, Assistant Attorney General, Jeffery S. Thompson, Assistant Attorney General, St. Paul, Minnesota (for appellant).

Patrick B. Steinhoff, Malkerson Gunn Martin LLP, Minneapolis, Minnesota; and Leland J. Frankman, Frankman Law Offices, Minneapolis, Minnesota (for amicus curiae Minnesota Eminent Domain Institute).

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

## OPINION

WORKE, Judge

Appellant challenges the district court's award of attorney fees and other costs directly to respondent law firm under Minn. Stat. § 117.045. Because respondent did not have statutory standing to petition for fees directly and independently of plaintiff-petitioner, its former client, we reverse.

## FACTS

In 2012, appellant State of Minnesota Department of Transportation (MnDOT) permanently closed a restaurant's only access to a state highway. The restaurant's

owners had purchased the property with the assistance of a mortgage loan from plaintiff-petitioner Vermillion State Bank (Vermillion). Within months, loss of highway access forced the restaurant to close. The restaurant owners were no longer able to pay the mortgage, and Vermillion foreclosed on the property.

In January 2014, Vermillion retained respondent Faegre Baker Daniels (Faegre) to represent it in an inverse condemnation action against MnDOT. Faegre conducted title work to establish the exact physical location of the property, conducted extensive legal research, sent a demand letter, and drafted pleadings. In February 2015, Vermillion, pointing to a "lack of progress" on the case, terminated its agreement with Faegre and hired Larkin Hoffman Daly & Lindgren Ltd. (Larkin Hoffman). As directed by Vermillion, Faegre forwarded its work to Larkin Hoffman. Shortly thereafter, Larkin Hoffman filed a summons and complaint that were substantially identical to the pleadings prepared by Faegre.

In December 2015, the district court granted Vermillion's motion for summary judgment and ordered MnDOT to commence condemnation proceedings. Faegre filed a motion for $63,495.50 in attorney fees and $368.46 in costs under Minn. Stat. § 117.045. Vermillion also filed a motion for attorney fees, seeking reimbursement for $55,416.19 in fees and costs incurred while it was represented by Larkin Hoffman. Vermillion did not request any fees for the work performed by Faegre and informed Faegre that it would not pay Faegre directly. Vermillion maintains that Faegre is not entitled to fees because it was hired on a contingent basis—meaning that it would be paid only if it successfully prosecuted the inverse condemnation action—and fired before the inverse condemnation action was commenced. MnDOT agreed to pay Larkin Hoffman's fees but

argued that Faegre had no standing to bring a motion for attorney fees because Minn. Stat. § 117.045 allows only the landowner to petition the court for reimbursement; it does not allow an attorney to make a direct claim for fees.

The district court ordered MnDOT to pay Faegre $52,065 in attorney fees and $368.46 in other costs. It rejected MnDOT's claim that Faegre lacked standing to petition the court for fees and costs. This appeal followed.

## ISSUE

Did the district court err by determining that Faegre had standing to petition for attorney fees and costs under Minn. Stat. § 117.045?

## ANALYSIS

■ MnDOT argues that Faegre lacked standing to petition for fees and costs under Minn. Stat. § 117.045. MnDOT claims that the plain language of the statute allows only Vermillion to request attorney fees and other costs.

■ "Standing is acquired when a party has suffered some injury-in-fact or when a party is the beneficiary of some legislative enactment granting standing." *Citizens for a Balanced City v. Plymouth Congregational Church*, 672 N.W.2d 13, 18 (Minn. App. 2003) (quotation omitted). Here, Minn. Stat. § 117.045 allows only certain persons to bring a petition for attorney fees and costs. Accordingly, the issue is one of statutory standing, not general standing or "injury-in-fact." *See id.* ("Because standing is statutorily defined in this case, Minneapolis's reliance on general standing doctrine or injury-in-fact analysis is misplaced." (quotation omitted)).

■ Statutory standing determines whether a particular party "has a cause of action under the statute." *Steel Co. v. Citi-*

*zens for a Better Env't*, 523 U.S. 83, 97 n.2, 118 S.Ct. 1003, 1013 n.2, 140 L.Ed.2d 210 (1998). The question of statutory standing "is closely related to the merits inquiry (oftentimes overlapping it) and is analytically distinct from the question [of] whether a . . . court has subject-matter jurisdiction to decide the merits of a case." *Roberts ex rel. H.F.W. & T.W. v. Hamer*, 655 F.3d 578, 580 (6th Cir. 2011); *cf. Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 861-63 (Minn. 2010) (affirming dismissal for failure to state a claim by an individual who had no right to sue under the Minnesota Human Rights Act, discussing the issue both in terms of "statutory standing" and as a question of whether the statute "provide[s] a cause of action").

 This court reviews an award of attorney fees for an abuse of discretion. *County of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013). But determining whether Faegre had statutory standing to petition for attorney fees requires us to interpret Minn. Stat. § 117.045. Statutory interpretation is a question of law that this court reviews de novo. *Krueger*, 781 N.W.2d at 861.

 The objective of statutory interpretation is to "effectuate the intent of the legislature." *Ly v. Nystrom*, 615 N.W.2d 302, 307 (Minn. 2000). "When legislative intent is clear from the statute's plain and unambiguous language, [this court] interpret[s] the statute according to its plain meaning without resorting to other principles of statutory interpretation." *State ex rel. Duncan v. Roy*, 887 N.W.2d 271, 276 (Minn. 2016) (quotation omitted). In other words, if the plain meaning of the statute is clear and unambiguous, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn. Stat. § 645.16 (2016). If "a statute is reasonably susceptible to more than one interpretation, it is ambiguous and [this court] may

resort to canons of construction or legislative history in order to determine the intent of the [l]egislature." *Figgins v. Wilcox*, 879 N.W.2d 653, 656 (Minn. 2016).

The district court ordered MnDOT to pay Faegre's fees and costs under Minn. Stat. § 117.045. The statute provides:

> Upon successfully bringing an action compelling an acquiring authority to initiate eminent domain proceedings relating to a person's real property which was omitted from any current or completed eminent domain proceeding, *such person* shall be entitled to petition the court for reimbursement for reasonable costs and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred in bringing such action. Such costs and expenses shall be allowed only in accordance with the applicable provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 . . . .

Minn. Stat. § 117.045 (emphasis added). MnDOT argues that "[t]he only party entitled to petition the court for costs and expenses is 'such person' " and that "such person" refers to the "person" previously mentioned who owns the "real property" at issue. Accordingly, in this case, only Vermillion is permitted to petition for fees and costs under the statute. The district court determined that this interpretation of the statute was "too narrow" and that allowing Faegre to petition for fees and costs "does no violence to the statute and is within the spirit of the law." The question of whether section 117.045 allows anyone other than the landowner to petition for fees is one of first impression.

 The statute does not define "such person." "When there is no applicable statutory definition, [this court] often consult[s] dictionary definitions to discern a word's plain meaning." *Wayzata Nissan,*

*LLC v. Nissan N. Am., Inc.*, 875 N.W.2d 279, 286 (Minn. 2016). Definitions of "such" include: "[o]f this kind," "[o]f a kind specified or implied," and "[o]f a degree or quality indicated." *The American Heritage College Dictionary* 1356 (3d ed. 2000). The statute refers to a person whose real property was omitted from an eminent domain proceeding and who successfully brought an action to compel eminent domain proceedings and then provides that "such person shall be entitled to petition the court for reimbursement" of attorney fees and costs. Minn. Stat. § 117.045. "[S]uch person," refers to the landowner who successfully brought an action to compel eminent domain proceedings because that is the "kind" of person previously "specified or implied." Therefore, as MnDOT argues, the only person permitted to petition for fees and costs under the statute is the landowner.

Faegre argues that "person" and "such person" "could mean not only the property owner, but also the property owner's representative or successor, or one working on the property owner's behalf—such as an attorney." It claims that Vermillion does not fit MnDOT's definition of "such person" because the restaurant, not Vermillion, "was the 'person' whose 'real property' was 'omitted from' the condemnation proceeding." But chapter 117 defines "[o]wner" as "all persons with any interest in the property subject to a taking, whether as proprietors, tenants, life estate holders, encumbrancers, beneficial interest holders, or otherwise." Minn. Stat. § 117.025, subd. 3 (2016). The condemnation petition must name all "owners" of the land to be taken. Minn. Stat. § 117.055, subd. 1 (2016). As the holder of a mortgage interest on the property at the time the access point was closed, Vermillion was an "owner." Moreover, the district court determined that Vermillion is entitled to recover damages for the taking. Vermillion, not its attorney or anyone working on its behalf, is the "person" who owns the "real property" at issue. *See* Minn. Stat. § 117.045. And, as the plaintiff-petitioner, Vermillion is the party that "successfully [brought] an action compelling an acquiring authority to initiate eminent domain proceedings." *See id.*

Because section 117.045 references the "Uniform Relocation Assistance and Real Property Acquisition Policies Act," we must interpret the statute in light of the federal Relocation Act. *DeCook v. Rochester Int'l Airport Joint Zoning Bd.*, 811 N.W.2d 610, 615 (Minn. 2012). In *DeCook*, the supreme court determined that the reference to the federal act "mean[s] that a property owner who is successful in requiring an acquiring authority to commence condemnation proceedings is entitled to recover those types of costs and expenses that would be required to be paid under 42 U.S.C. § 4654(c) if federal funds were used in the project." *Id.* The supreme court concluded that "[b]ecause 42 U.S.C. § 4654(c) specifically provides for payment by the acquiring authority of the property owner's reasonable attorney fees, ... Minn. Stat. § 117.045 similarly requires payment of the property owner's reasonable attorney fees, including attorney fees incurred on appeal." *Id.* The federal Relocation Act provides that the "plaintiff" may be reimbursed for attorney fees and costs, 42 U.S.C. § 4654(c) (2016), and in *DeCook*, the supreme court interpreted the federal statute and section 117.045 as granting the "property owner[ ]" the right to attorney fees. *Id.* Here, Vermillion is the plaintiff and the property owner, and Faegre does not fall into either category. The federal Relocation Act and *DeCook*, therefore, further indicate that under the plain meaning of Minn. Stat. § 117.045, Faegre is not entitled to petition for attorney fees and costs.

Faegre claims that decisions from other jurisdictions support the district court's determination that Faegre was entitled to petition for fees and costs under section 117.045. These cases involve different statutes and are not binding authority. *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (stating that decisions from other jurisdictions are not binding). Moreover, these cases either do not support Faegre's position or are of questionable validity.

In *Maxey v. Redev. Auth. of Racine*, the Wisconsin Court of Appeals interpreted a statute providing for an award of "litigation expenses to the condemnee." 120 Wis.2d 13, 353 N.W.2d 812, 816 (Ct. App. 1984). The condemnee's former attorney moved to recover fees under the statute. *Id.* at 819. The district court refused to award the fees directly to the attorney and instead awarded them to the condemnee, concluding that the statute did not authorize an award of fees to anyone other than the condemnee. *Id.* Noting that the attorney had "taken an assignment of his fees" from the condemnee, the court of appeals reversed and directed the district court to award the fees directly to the attorney. *Id.* at 820. Because Faegre does not claim that it has an assignment of Vermillion's claim for fees and costs, this case is easily distinguished.

Faegre next argues that *Carter v. City of Oklahoma City* supports its claim. 862 P.2d 77 (Okla. 1993). That case dealt with a statute providing for an award of attorney fees to "such plaintiff" in an inverse condemnation case. *Id.* at 80. The district court awarded attorney fees for the services of three attorneys who represented the plaintiffs at different times. *Id.* at 79 & n.1. The Oklahoma Supreme Court affirmed the district court's fee award. *Id.* at 82. Faegre argues that "no one even questioned the propriety of the former attor-

neys' direct claims for attorney's fees." But for this reason the Oklahoma Supreme Court did not rule on the matter and the case does not support Faegre's position. Moreover, it is not clear that the attorneys even made a direct claim for fees. The opinion states that "[a]ll three attorneys have filed for recovery of fees from the City," but it also states that the "[l]andowners" filed a motion for attorney fees and costs and were awarded those fees and costs by the district court. *Id.* at 79 & n.1. In addition, the Oklahoma Supreme Court concluded that "[t]he [district] court did not err in its award of reasonable costs and fees *to the [l]andowners." Id.* at 81 (emphasis added).

Faegre also cites *James v. Home Constr. Co. of Mobile.* 689 F.2d 1357 (11th Cir. 1982). That case interpreted the attorney fees provision of the federal Truth in Lending Act (TILA), which contains language somewhat similar to Minn. Stat. § 117.045. *Id.* at 1357-58 (citing 15 U.S.C.A. § 1640(a)(3)). The Eleventh Circuit Court of Appeals determined that "it is the attorney who is entitled to fee awards in a TILA case, not the client." *Id.* at 1358. The court also indicated that a plaintiff has no right to waive attorney fees in a settlement agreement because that "practice would thwart both the statute's private enforcement scheme and its remedial objectives." *Id.* at 1359. Accordingly, the court concluded that TILA provides attorneys with an independent right to seek fees. *Id.*

Approximately four years after *James*, in *Evans v. Jeff D.*, the United States Supreme Court concluded that the district court did not abuse its discretion by approving a settlement conditioned on the waiver of attorney fees under a civil rights fee-shifting statute. 475 U.S. 717, 740-43, 106 S.Ct. 1531, 1544-45, 89 L.Ed.2d 747 (1986). The Supreme Court stated that

Congress "neither bestowed fee awards upon attorneys nor rendered them non-waivable or nonnegotiable; instead, it added them to the arsenal of remedies available to combat violations of civil rights, a goal not invariably inconsistent with conditioning settlement on the merits on a waiver of statutory attorney's fees." *Id.* at 731-32, 106 S.Ct. at 1539-40. *Evans* indicates that the right to attorney fees belongs to the client, not the attorney, and calls *James* into doubt. *See id.*; *see also Astrue v. Ratliff*, 560 U.S. 586, 598, 130 S.Ct. 2521, 2529, 177 L.Ed.2d 91 (2010) (concluding that federal statutes awarding fees to the "prevailing party" entitle the party, not the lawyer, to receive the fees). Several federal appeals courts have similarly held that the right to attorney fees under TILA and other federal statutes belongs to the client and that an attorney generally has no independent right to seek statutory fees. *See Zeisler v. Neese*, 24 F.3d 1000, 1001 (7th Cir. 1994) (concluding that in TILA cases "entitlement to attorney's fees belongs to the plaintiff, not to his ... lawyer"); *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1511 (11th Cir. 1988) (stating that "the attorney" is not "a recognized applicant for fees and expenses" under the Equal Access to Justice Act); *Willard v. City of Los Angeles*, 803 F.2d 526, 527 (9th Cir. 1986) ("[A]n attorney has no standing under section 1988 to seek attorney's fees in his own behalf."); *Freeman v. B & B Assocs.*, 790 F.2d 145, 153 (D.C. Cir. 1986) ("We find that under TILA an attorney has no cause of action for fees separate from and independent of the underlying claim of his client."); *Brown v. Gen. Motors Corp., Chevrolet Div.*, 722 F.2d 1009, 1011 (2d Cir. 1983) ("Under the [Civil Rights Attorney's Fees Awards] Act it is the prevailing party rather than the lawyer who is entitled to attorney's fees.").

■ The meaning of Minn. Stat. § 117.045 is plain and unambiguous. The landowner is the only person that may petition for attorney fees and costs, and an attorney has no right to seek fees and costs under the statute independently of the landowner.

Faegre argues that the purpose of awarding attorney fees under section 117.045 weighs against this interpretation. But the language of a plain and unambiguous statute may not be set aside to pursue the spirit of the law. Minn. Stat. § 645.16.

■ Moreover, contrary to Faegre's contention, the purpose of the statute is consistent with allowing only the landowner to petition for attorney fees. "[T]he purpose of Minn. Stat. § 117.045 ... is to assure that any landowner who is forced to take legal action against an acquiring authority [to compel eminent domain proceedings] is made whole." *DeCook*, 811 N.W.2d at 614 (quotation omitted). The statute accomplishes that purpose by allowing the landowner to recover attorney fees and costs from the acquiring authority.

Faegre argues that the statute's purpose is also to "protect [an] aggrieved property owners' right to legal representation by encouraging attorneys to take meritorious cases where the owners may not be able to pay attorney[ ] fees on their own." But in support of this proposition, Faegre does not cite a single case involving Minn. Stat. § 117.045 or condemnation; instead, it cites cases involving civil rights statutes where "the award should provide incentive for counsel to act as private attorney general." *Liess v. Lindemyer*, 354 N.W.2d 556, 558 (Minn. App. 1984). In those cases, the private attorney is standing in the shoes of the government and advancing the public interest by enforcing the statute. *Id.* Often plaintiffs have minimal financial means and success will result in only a small amount

of damages. *See Sigurdson v. Isanti,* 386 N.W.2d 715, 722 (Minn. 1986) ("An obvious reason for enactment of [the attorney fee provision of the Minnesota Human Rights Act] was to encourage victims of discrimination to bring suit, particularly where the relief sought is not a large money judgment, and to make legal counsel available in these cases."); *Liess,* 354 N.W.2d at 558 ("The purpose of [s]ection 1988 is to encourage lawyers to accept civil rights cases in which damages may be small, nominal, or non-existent."). This rationale is not applicable to inverse condemnation cases where the plaintiff is suing the government to recover just compensation for a taking. In inverse condemnation cases, financial awards may be large, and, as a landowner, the plaintiff likely has at least some financial means. Moreover, even if we assume that ensuring access to counsel is a purpose of Minn. Stat. § 117.045, the statute advances that purpose by allowing successful plaintiffs to recover the funds needed to pay their attorneys.

Faegre also argues that because statutory rights to just compensation are remedial, Minn. Stat. § 117.045 must be interpreted liberally to accomplish its remedial purposes. *See Moorhead Econ. Dev. Auth. v. Anda,* 789 N.W.2d 860, 876 (Minn. 2010) ("[W]e have observed that because a constitutional provision for just compensation was inserted for the protection of the citizen, it ought to have a liberal interpretation, so as to effect its general purpose." (quotation omitted)). But liberal construction is not applicable when, as here, the statute is clear and unambiguous. *See Larson v. State,* 790 N.W.2d 700, 704 (Minn. 2010) ("[A] rule of liberal construction does not apply where . . . a statute is unambiguous on its face.").

Finally, Faegre argues that MnDOT's interpretation of Minn. Stat. § 117.045 produces unreasonable and ab-

surd results that the legislature could not have intended. When construing a statute, this court presumes that the legislature did not intend an absurd or unreasonable result. Minn. Stat. § 645.17(1) (2016). This canon, however, is applicable only "in an exceedingly rare case in which the plain meaning of the statute utterly confounds the clear legislative purpose of the statute." *State v. Schouweiler,* 887 N.W.2d 22, 26-27 (Minn. 2016) (quotation omitted). As stated above, the plain language of Minn. Stat. § 117.045 is consistent with its goal of making landowners whole. It does so by allowing landowners who prevail in an inverse condemnation action to petition for attorney fees and costs.

Much of Faegre's claim that this interpretation of the statute leads to absurd results is based on a misreading of MnDOT's argument. Faegre claims that MnDOT's interpretation of the statute requires clients to actually pay their attorneys before they can petition for fees under Minn. Stat. § 117.045. Faegre argues that this would discourage landowners with limited resources from bringing claims and "wreak havoc" on contingent fee agreements that are common in inverse condemnation cases. But MnDOT does not contend, and we do not hold, that the attorney must actually be paid before the landowner may petition for fees. We hold only that the landowner, not the landowner's former attorney, is the proper party to seek fees under the statute.

Faegre also claims that allowing only the landowner to petition for fees would encourage the acquiring authority to avoid attorney fees by sweetening settlement offers in return for the landowner's promise not to seek fees. This would discourage attorneys from taking meritorious inverse condemnation cases. This is exactly the argument that the United States Supreme Court rejected in *Evans.* 475 U.S. at 731-

32, 106 S.Ct. at 1539-40. As discussed above, in that case, the Supreme Court concluded that Congress bestowed the right to seek fees upon civil rights plaintiffs, not their attorneys, and that prohibiting a plaintiff from waiving attorney fees in exchange for a settlement on the merits "would itself impede vindication of civil rights, at least in some cases, by reducing the attractiveness of settlement." *Id.* at 732, 106 S.Ct. at 1540. This rationale is equally applicable to inverse condemnation cases. The purpose of Minn. Stat. § 117.045 is to make the landowner whole. *DeCook,* 811 N.W.2d at 614. If the landowner believes that the best way to do that is to waive an attorney fee award to increase a settlement offer, then the landowner should not be prevented from doing so.

Faegre further argues that prohibiting an attorney from filing an independent claim for fees could result in unnecessary litigation and lead to a fracturing of the attorney-client relationship by forcing attorneys to sue their clients for fees. But requiring the attorney to seek payment from the client is not abnormal, it is the general rule. *See Panola,* 844 F.2d at 1511 ("Historically, the client and the lawyer make their fee arrangement, and the lawyer looks to the client for payment of the legal fee."). Minn. Stat. § 117.045 simply perpetuates this system. On the other hand, Faegre's view of the statute harms the attorney-client relationship by allowing an attorney to contravene his or her client's wishes by bringing an independent claim for fees and costs.

Minn. Stat. § 117.045 is clear and unambiguous. Only the landowner may petition for attorney fees and costs under the stat-ute. This is not absurd or unreasonable; it is consistent with the statute's purpose of ensuring that the landowner is made whole.

## DECISION

Because Faegre had no standing to petition for fees and costs under section 117.045, the district court erred by awarding Faegre its fees and costs.[1]

**Reversed.**

---

1. MnDOT raises other arguments relating to Faegre's ability to petition for fees and costs as a nonparty, defects in the affidavit Faegre filed with its motion for fees, and Faegre's right to recover certain fees. Because we reverse the district court's order awarding Faegre fees and costs on statutory-standing grounds, we do not address these arguments.