SCHOOL DISTRICTS: SCHOOL PROPERTY: PURCHASE OF REAL PROPERTY; SALE OF REAL PROPERTY: Intermediate school district's purchase of property from a member district where the member district retains title as security for the purchase price is governed by Minn. Stat. § 465.71 and the limitations therein and is not authorized by Minn. Stat. § 465.035. Overruling prior Attorney General Opinions to the extent they conflict with Minn. Stat. § 465.71. *See, e.g.*, Ops. Atty. Gen. 622-j-22 (Sept. 17, 1974); 622-j-5 (Apr. 30, 1971); 622-I-2 (Jan. 19, 1963); 622-I-2 (Dec. 8, 1961); 622-i-11 (Apr. 3, 1959); 622i2 (Apr. 9, 1958); 622-i-11 (Apr. 3, 1946); 622-I-11 (Jun. 7, 1909)
Minn. Stat. §§ 123B.51, 465.035 and 465.71.

Index No. 622-i-11



February 17, 2023

Peter A. Martin
Kennedy & Graven, Chartered
Fifth Street Towers
150 South Fifth Street, Suite 700
Minneapolis, MN 55402

**Re:    Opinion Request – Purchase of Schoolhouse Using Contract for Deed**

Dear Mr. Martin:

You represent SouthWest Metro Intermediate District No. 288 ("SouthWest" or "District") and pursuant to Minn. Stat. § 8.07 you request an interpretation of Minnesota law related to the purchase of a building for District purposes. Specifically, you ask whether SouthWest may purchase a school building from one of its member districts pursuant to a contract for deed or installment purchase contract.

In our opinion, the purchase of real or personal property by SouthWest from a member district where the member district retains title as security for the purchase price is governed by Minn. Stat. § 465.71 and the limitations therein and is not authorized by Minn. Stat. § 465.035.

**BACKGROUND**

SouthWest is an intermediate school district comprised of 11 independent districts. The District was formed pursuant to Minn. Stat. §§ 136D.41-136D.49. The District's mission is to provide services that complement the educational services offered by its member districts. These services include mental health supports and special education. SouthWest owns and operates several buildings and sites to facilitate delivery of these services.

You state that for several months SouthWest has been looking to acquire additional building space to expand the delivery of special education and much-needed mental health services to students with disabilities. A member school district has proposed selling to SouthWest, for $1,517,000, a recently closed elementary school owned by the member district. The member has proposed a sale by contract for deed, under which SouthWest would pay $517,000 at closing and the remainder through two semi-annual payments of $100,000 over five years.

## QUESTIONS

1. Is an independent school district authorized to sell, and is SouthWest authorized to purchase, a schoolhouse site owned by the independent school district pursuant to a contract for deed or installment purchase contract?

2. Does Minn. Stat. § 465.035 authorize the transaction described above?

## ANSWER AND LEGAL ANALYSIS

We begin by acknowledging that in establishing Intermediate District No. 288 in 2015 the Legislature granted to SouthWest all the powers granted by law to any or all of the participating school districts, and no more. Minn. Stat. § 136D.44. Thus, as you note, if a school district is not able to purchase property under a contract for deed, SouthWest will be similarly limited.

We also begin by noting that a contract for deed is a financing arrangement under which the buyer purchases property by borrowing the purchase money from the seller. *In re Butler*, 552 N.W.2d 226, 229 (Minn. 1996). During the contract term the seller holds legal title, and the purchaser holds equitable title. *Nichols v. L & O, Inc.*, 196 N.W.2d 465, 468 n.7 (Minn. 1972). A contract for deed is sometimes referred to as an installment land contract because the buyer makes installment payments over time until the debt is paid. *See, e.g.*, *Nolan v. Greeley*, 185 N.W. 647, 648 (Minn. 1921).

***School District Purchase by Contract for Deed or Installment Purchase***. A school district is among the governmental entities subject to laws regarding public indebtedness. Minn. Stat. § 475.51, subd. 2. As you acknowledge, opinions of this Office dating back many decades held that public school districts may not purchase real property pursuant to a contract for deed or installment purchase agreement. Ops. Atty. Gen. 622-j-22 (Sept. 17, 1974); 622-j-5 (Apr. 30, 1971); 622-I-2 (Jan. 19, 1963); 622-I-2 (Dec. 8, 1961); 622-i-11 (Apr. 3, 1959); 622-i-11 (Apr. 3, 1946); 622-I-11 (Jun. 7, 1909). In 1958, the analysis stated explicitly that the only method by which a district could become indebted was by bond issue. Op. Atty. Gen. 622i2 (Apr. 9, 1958), p. 3.

In the intervening decades, the Legislature has established methods of financing school capital projects in addition to a bond issue. Specific to the question posed, in 1982 the Legislature authorized school districts to acquire real or personal property through installment contracts or lease-purchase agreements if they meet specific requirements. 1982 Minn. Laws ch. 523 art. 15 § 4. That law now provides:

> A home rule charter city, statutory city, county, town, or school district may purchase personal property under an installment contract, or lease real or personal property with an option to purchase under a lease-purchase agreement, by which contract or agreement title is retained by the seller or vendor or assigned to a third party as security for the purchase price, including interest, if any, but such purchases are subject to statutory and charter provisions applicable to the purchase of real or personal property. . . . The obligation created by an installment contract or a lease-purchase agreement for personal property, or an installment contract or a lease-purchase agreement for real property if the amount of the contract for purchase of the real property is less than $1,000,000, shall not be included in the calculation of net debt for purposes of section 475.53, and shall not constitute debt under any other statutory provision. No election shall be required in connection with the execution of an installment contract or a lease-purchase agreement authorized by this section. The city, county, town, or school district must have the right to terminate a lease-purchase agreement at the end of any fiscal year during its term.

Minn. Stat. § 465.71. *See also,* Minnesota Department of Education, *Guide for Planning School Construction Projects in Minnesota* (Nov. 8, 2018), p. 8.[1]

Accordingly, it is no longer the case that the only method by which a district may become indebted is through a bond issue. Section 465.71 authorizes installment contracts and lease-purchase agreements in which title to the property is retained by the seller. However, the statute imposes additional requirements, including that the purchase is subject to other statutes applicable to the purchase of property by the governmental entity, and that the purchaser must have the right to terminate a lease-purchase agreement at the end of any fiscal year during the term of the agreement.

Section 465.71 is referenced in the statute that allows school districts to acquire sites for schoolhouses:

> According to section 126C.40, subdivision 1, or 465.71, when funds are available, the board may locate and acquire necessary sites of schoolhouses or enlargements, or additions to existing schoolhouse sites by lease, purchase or condemnation under the power of eminent domain.

Minn. Stat. § 123B.51, subd. 1. This section allows such acquisitions by lease or purchase when funds are available. Therefore, a school district is authorized to use section 465.71 for the purpose of acquisition of a school site.

---

[1] https://education.mn.gov/MDE/dse/schfin/fac/cons/index.htm

In a telephone conversation you indicated that use of an instrument described in section 465.71 is not an option for the parties. However, to answer the question posed, SouthWest, having the powers of an independent district, may purchase property with the seller retaining title as security for the purchase if SouthWest meets the requirements of Minn. Stat. § 465.71. Accordingly, we hereby overrule our prior opinions on this subject to the extent they conflict with Minn. Stat. § 465.71. These opinions include Ops. Atty. Gen. 622-j-22 (Sept. 17, 1974); 622-j-5 (Apr. 30, 1971); 622-I-2 (Jan. 19, 1963); 622-I-2 (Dec. 8, 1961); 622-i-11 (Apr. 3, 1959); 622i2 (Apr. 9, 1958); 622-i-11 (Apr. 3, 1946); 622-I-11 (Jun. 7, 1909).

Your first question also asked whether a school district is authorized to sell pursuant to a contract for deed or installment purchase contract. Section 123B.51, subd. 1 authorizes a district to sell schoolhouses or sites. The statute imposes no express limitation on purchaser financing when a school district is the seller and not the purchaser. *Id.* Accordingly, we see no reason to revisit the opinions of this Office, cited in your letter, that hold a school district may sell a schoolhouse pursuant to contract for deed. *See, e.g.,* Op. Atty. Gen., 622-i-8 (Sept. 9, 1983).

***Sale to Public Corporation via "Such Consideration as May be Agreed Upon."*** Despite the clear application of section 465.71 to school district real property acquisitions evidenced in Minn. Stat. § 123B.51, you also ask us to consider whether the proposed transaction would be permissible under Minn. Stat. § 465.035. That statute provides:

> Any county, town, city or other public corporation may lease or convey its lands for a nominal consideration, without consideration or for such consideration as may be agreed upon to the state or to any governmental subdivision, to . . . another public corporation . . . for public use when authorized by its governing body.

We note that this statute predates and is significantly broader in scope than section 465.71. You argue that a school district is a public corporation and that the phrase "such consideration as may be agreed upon" affords the parties discretion to fashion any type of consideration including a contract for deed or installment purchase agreement.[2]

However, reading "such consideration as may be agreed upon" in section 465.035 to authorize any contract for deed or installment purchase would conflict with the specific requirements in Minn. Stat. § 465.71 for the terms of such instruments. When a general provision in a law conflicts with a specific provision in another law, the specific provision controls. Minn. Stat. § 645.26, subd. 1. Likewise, a later enacted law controls over a conflicting prior enactment.

---

[2] You assert that this interpretation is supported by an opinion from this Office that determined a school district could not sell property to a non-profit hospital corporation pursuant to a contract for deed because the non-profit was not a public corporation. Op. Atty. Gen. 622-i-j (Aug. 11, 1952). You claim the opinion implied that a contract for deed would have been authorized if the proposed transaction was with a public corporation. We see no basis in the opinion for this implication.

*Id.* at subd. 4. Therefore, with respect to school district schoolhouse and site acquisition, section 465.71 would control over any inconsistent language in section 465.035.

To the extent further analysis is helpful, we also question whether the phrase "such consideration as may be agreed upon" is intended to reference the method of financing the purchase. In *State v. Schouweiler*, 887 N.W.2d 22, 25 (Minn. 2016) the Minnesota Supreme Court noted that in ordinary, nonlegal speech, "consideration" means "payment given as compensation for a good or service" (citing *Webster's Third New International Dictionary of the English Language Unabridged* 484 (2002)), and as a contractual term of art means "act or forbearance that induces a contractually binding promise" (citing *Consideration, Black's Law Dictionary* (10th ed. 2014)). *Schouweiler*, 887 N.W.2d at 25.

As a method of financing and not the value per se, a contract for deed or installment purchase contract could be an "act or forbearance" which might be "such consideration" only if the Legislature intended to use the phrase not in its ordinary sense but as a contractual term of art.

To determine whether words in a statute have a technical or ordinary meaning, we look to the context in which the word appears. *Schouweiler,* 887 N.W.2d at 25. The "such consideration" phrase is one in a series – "a nominal consideration, without consideration, or for such consideration as may be agreed upon." Minn. Stat. § 465.035. Nominal consideration is defined similarly in both legal and nonlegal contexts. In its legal sense it means "Consideration that is so insignificant as to bear no relationship to the value of what is being exchanged (e.g., $10 for a piece of real estate)" *Nominal consideration, Black's Law Dictionary* (8th ed. 2004). In its ordinary nonlegal definition "nominal" means "existing in name only;" or "[I]nsignificantly small; trifling; *a nominal sum.*" *The American Heritage Dictionary of the English Language* (1997).

The statute authorizes conveyances where consideration is nominal – i.e., in name only or trifling – and gifts of land from one public entity to another. A gift cannot induce a contractually binding promise. *Barnier v. Wells*, 476 N.W.2d 795, 797 (Minn. App. 1991). Thus, the series in which "such consideration" appears directs us to the nonlegal meaning – the payment agreed upon – and not the method of financing as an act inducing a contractually binding promise. Reading "such consideration" to refer to the dollar amount agreed upon is more consistent with "nominal" as a statement of value, such as "ten dollars," and "without" as indicating a gift.

Given our determinations that section 465.71 controls over section 465.035, and that the method of financing – by contract for deed – is not what is meant by "such consideration as may be agreed upon," we need not decide whether an intermediate school district is a public corporation within the meaning of section 465.035.[3] Even if SouthWest was such a corporation, section 465.71 controls the proposed transaction over section 465.035.

---

[3] We also believe, in light of the distinctions among types of school districts as public corporations reflected in Minn. Stat. § 123A.55, that this determination is best left to the Legislature.

We hope this analysis is helpful to you.

Sincerely,

/s/ **Susan Gretz**
SUSAN C. GRETZ
Assistant Attorney General


Encl:   Op. Atty. Gen., 622-i-8 (Sept. 9, 1983)
        Op. Atty. Gen. 622-i-7 (Aug. 11, 1952)

SCHOOL DISTRICTS: SCHOOL PROPERTY: SALE OF REAL PROPERTY: PURCHASE MONEY MORTGAGE: A school district's authority to sell schoolhouse sites includes the authority to accept a purchase money mortgage to secure future payments of the purchase price. Minn. Stat. § 123.36, subd. 1 (1982).

September 9, 1983

Eric S. Anderson
Fredrikson, Byron, Colborn, Bisbee
  & Hansen
Attorneys for Special School
  District No. 1
4744 IDS Center
Minneapolis, Minnesota    55402

622-i-8
(Cr. Ref. 622-i-4 and 622-i-7)

Dear Mr. Anderson:

In your letter to Attorney General Hubert H. Humphrey, III, you present substantially the following:

FACTS

The School Board of Special School District No. 1 (Minneapolis) has determined that it is in the best interests of the District to sell the schoolhouse site of the former Marshall University High School. An offer has been made to the District to purchase the property. The offer includes fifty percent to be paid by the purchaser at the time of closing of the sale with the remaining fifty percent plus interest to be paid within two years thereafter. The offeror proposes to grant a purchase-money mortgage to the District to secure payment of the unpaid balance of fifty percent plus interest.

You then ask substantially the following:

QUESTION

May a school district, in selling a schoolhouse site, accept partial payment at the time of closing and take a purchase-money mortgage on the property sold as security for the payment of the remaining portion of the sale price?

OPINION

Subject to the qualifications set forth below, we answer your question in the affirmative.

Special School District No. 1 has all the powers of an independent school district. Minn. Stat. § 123.51 (1982). These powers include the authority to "sell or exchange schoolhouses or sites, and execute deeds of conveyance thereof." Minn. Stat. § 123.36, subd. 1 (1982) (emphasis added). Your question requires an analysis to determine whether the authorization to "sell" schoolhouse sites includes the authority to transfer the property taking back, in part, a purchase-money mortgage as part of the consideration.

In determining the breadth of the word "sell" as used in section 123.36, subdivision 1, it is appropriate to utilize the common and approved usage of the word. Minn. Stat. § 645.08(1) (1982). As stated in Bennett v. Dove, 277 S.E.2d 617, 619 (W. Va. App. 1981), the word:

> "Sell" is commonly and ordinarily understood to mean an act of giving up property for money that the buyer either pays or promises to pay in the future, Webster's Third New International Dictionary (P.B. Gove Ed., 1976).

(Emphasis added.) The word "sell" has been similarly defined in other cases. See, e.g., Gudim Realty, Inc. v. Hughes, 264 Minn. 39, 42, 169 N.W.2d 216, 218 (1969); K.C.S., Ltd.   East Main Street Land Development Corp., 40 Md. App. 19   :30 A.2d 181, 183 (1978). Furthermore, the concept of a sa    including an exchange of

property for payment or future payment is closely aligned with the concept that valuable consideration is an essential element of a contract.   In that regard, the Minnesota Supreme Court in Craigmile v. Sorenson, 239 Minn. 383, 396, 58 N.W.2d 865, 872 (1953) stated that:

> The consideration essential to the validity of an agreement for the purchase or sale of land need not be paid at the time of making the agreement. The agreement of the vendee to pay in the future is sufficient consideration for the promise of the vendor to convey.

Thus, the concept of the authority to "sell" property is quite broad absent specific statutory limits concerning the terms of payment of the purchase price.   Prior opinions of this Office have clearly stated that in the exercise of this authority, the school board is subject to a general duty to obtain the best price and terms reasonably obtainable in the market. See, e.g., Ops. Atty. Gen. 622-i-7, April 3, 1946; 622-i-8, July 10, 1940 and April 28, 1930.

The fact that, in some situations, the best offer might entail a sale on credit terms is consistent with prior opinions of this Office which have concluded that school districts are not precluded from selling school sites on a contract for deed. See, e.g., Ops. Atty. Gen. 622-i-7, Jan. 31, 1967; Dec. 15, 1949 and 622-i-4, June 25, 1934. Given that the authority to sell may include the authority to receive future payments, we are aware of no legal prohibition of the taking of a purchase-money mortgage as

security for such payments as opposed to the holding of a vendor's interest in a contract for deed. Indeed, in at least one instance, a statute amplifies upon the authority of a school district to sell real property acquired in satisfaction of certain claims as follows:

> Each tract or portion shall be sold by the district as soon as there may be realized the fair value as determined by such board. Any such sale may be authorized by resolution of the board, and may be made for cash, or for part cash and the deferred balance secured by contract for deed or purchase money mortgage, on such terms as the board approved.

Minn. Stat. § 124.07, subd. 2 (1982).

Two prior opinions of this Office might be cited as implying that use of a purchase-money mortgage in the sale of a schoolhouse site is not permissible. Op. Atty. Gen. 622-i-4, June 25, 1934 says:

> We recommend that, if credit is extended, the sale be made on a contract for deed rather than the taking of a mortgage.

This unexplained statement of preference, however, does not cite or indicate the existence of any outright legal prohibition of the taking of a mortgage.

Op. Atty. Gen. 622-i-7, Dec. 15, 1949 arguably contains more direct language. In concluding that such a sale could be made on credit terms, the opinion further says that:

> It is further my opinion that the school district is without authority to convey the title by deed until the full purchase price has been paid.

Again, no particular authority or rationale is set forth for this statement. It appears, however, from the facts set forth in that

opinion, that the school board was acting under an express restriction in terms of price contained in the referendum authorization for sale which was required under 1949 law since repealed. Thus, we do not believe that the statement quoted above governs this situation in which the school board is directly granted the general authority to "sell ... schoolhouses or sites ...."

Based upon the foregoing, it is our opinion that the authority of the school board to sell schoolhouse sites includes the authority to accept a purchase-money mortgage to secure future payments of the purchase price if in so doing the board fulfills its general obligation to secure the best available price and financial terms on behalf of the district. The question of whether the taking of such a mortgage in your specific situation is consistent with that obligation, however, involves factual issues upon which we offer no opinion.

Very truly yours,

HUBERT H. HUMPHREY, III
Attorney General


CHARLES T. MOTTL
Special Assistant
Attorney General

August 11 1952
April 5, 1946
Sept. 29, 1925

622-N-7

Mr. H. Horace Burry
Attorney for Independent School
District No. 3 of Benton County
Sauk Rapids, Minnesota

Dear Sir:

In your letter to the Attorney General dated August 6, 1952 you assume that all necessary preliminaries to the sale of unneeded school lands were completed, including election, and ask these

## QUESTIONS

"1. Is there any method by which an independent school district could convey school land to a non-profit hospital corporation without collecting the full value of the land as the sale price, either by donation or grant of the land or by joint user of the land under a contract with the corporation?

"2. Does the school board under the authority given by election have the power to convey such lands to a non-profit hospital corporation on a contract for deed or by deed containing a defeasance clause in the event hospital construction is not completed within five years from the date of the contract or deed containing such a clause; is there any similar workable contract arrangement to provide for reversion of the title to such property to the school board?"

## OPINION

Your questions require a negative answer.

I call attention to L. 1951, C. 73, MSA 465.035, but that does not apply to your situation because your proposition is not to convey to another public corporation.

Mr. H. Horace Burry --2                      August 11, 1952

        There is enclosed an opinion from file 622-X-7, dated April 3, 1946, holding that real estate owned by school district and not needed, upon authority of being granted by the voter of the district pursuant to Section 125.06, subd. 2, may, upon receiving adequate consideration therefor convey real estate to a purchaser.

                                Yours very truly

                                J. A. A. BURNQUIST
                                Attorney General


                                CHARLES E. HOUSTON
CEH BH                          Assistant Attorney General
 eo

Enclosure