STATE OF MINNESOTA

IN SUPREME COURT

A15-1349

Court of Appeals                                                         Anderson, J.
                                            Took no part, Chutich, McKeig, JJ.

State of Minnesota, ex rel. Demetris L. Duncan,

                    Appellant,

vs.                                                          Filed:  November 16, 2016
                                                             Office of Appellate Courts
Tom Roy, Commissioner of Corrections,

                    Respondent.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer L. Lauermann, Assistant
Public Defender, Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Kelly S. Kemp, Rachel E. Bell, Assistant Attorneys
General, Saint Paul, Minnesota, for respondent.

_____

S Y L L A B U S

Under the plain and unambiguous language of Minn. Stat. § 609.109, subd. 7 (2004)

(repealed 2005), appellant is not entitled to credit against his conditional-release term for

the time he spent in prison after the Department of Corrections revoked his supervised

release.

Affirmed.

1

O P I N I O N

ANDERSON, Justice.

Appellant Demetris Duncan filed a petition for a writ of habeas corpus, claiming that the Department of Corrections (DOC) had incorrectly calculated the expiration date of his sentence. Specifically, Duncan argued that, after the DOC revoked his supervised release, it failed to credit his incarceration time against his mandatory conditional-release term. The district court and the court of appeals disagreed and upheld the DOC's determination of the expiration date of Duncan's sentence. Because the phrase "the time the person served on supervised release" under Minn. Stat. § 609.109, subd. 7 (2004) (repealed 2005), does not include incarceration time served after the DOC revokes an inmate's supervised release, we affirm.

I.

On the evening of July 8, 2000, Duncan entered a stranger's apartment, located in St. Cloud, through an unlocked door. Duncan proceeded to the bedroom, where he found a woman asleep in bed with her young child. Duncan woke up the woman, threatened her with a knife, and dragged her into the next room, where he raped her.

Duncan was charged with first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(d) (2014), to which he later pleaded guilty. The district court committed Duncan to the Commissioner of Corrections for a term of 196 months, which constituted a double upward durational departure from the presumptive sentence. Duncan appealed his sentence, arguing that his conduct did not justify a double upward durational departure. In an unpublished opinion, the court of appeals upheld Duncan's sentence. *State*

2

*v. Duncan*, No. CX-01-1400, 2002 WL 378146, at *3 (Minn. App. Mar. 12, 2002), *rev. denied* (Minn. May 14, 2002).

As required by Minn. Stat. § 244.101, subd. 1 (2014), Duncan's sentence consisted of a term of imprisonment, which was originally 130-2/3 months, and a supervised-release term, which was originally 65-1/3 months. While incarcerated, Duncan was disciplined and sentenced to an additional 28 days of imprisonment. As a result, Duncan was not scheduled for release until August 2011, and his supervised-release term was projected to expire in December 2016. *See* Minn. Stat. § 244.05, subd. 1b(a) (2014) (providing that the supervised-release term is equal to the entire term of the sentence, minus the term of imprisonment and any time the inmate spends in prison as a result of discipline imposed by the Commissioner of Corrections).

Because he is a sex offender, Duncan was also sentenced to a conditional-release term.[1] *See* Minn. Stat. § 609.109, subd. 7 (2004). Accordingly, the Commissioner of Corrections was instructed to place Duncan on conditional release after Duncan completed his sentence. *See id.* Duncan was sentenced to 5 years of conditional release, "minus the time [he] served on supervised release." *Id.*, subd. 7(a).

---

[1] Functionally, conditional release is identical to supervised release. In fact, in the legislation that created conditional release, the subdivision was entitled "Supervised Release of Sex Offenders." Act of Apr. 29, 1992, ch. 571, § 25, 1992 Minn. Laws 1983, 2002. When the Legislature changed the felony-sentencing scheme to incorporate a period of "supervised release" into all felony sentences, it changed the term "supervised release" in section 609.109 to "conditional release." *See State v. Wukawitz*, 662 N.W.2d 517, 522-23 (Minn. 2003) (explaining the legislative changes in the use of "supervised release" and "conditional release").

Originally, Duncan was projected to serve 65-1/3 months on supervised release. When Duncan was sentenced, the DOC calculated the expiration date of an offender's sentence by assuming that the conditional-release term ran concurrently with the supervised-release term. *See generally State v. Koperski*, 611 N.W.2d 569, 572-73 (Minn. App. 2000) ("[S]upervised release and conditional release periods must run concurrently."), *abrogated by State ex rel. Pollard v. Roy*, 878 N.W.2d 341 (Minn. App. 2016), *rev. granted* (Minn. June 29, 2016). In other words, by subtracting Duncan's projected supervised-release term from his 5-year conditional-release term, Duncan would not serve additional time on conditional release beyond the time he served on supervised release. Consequently, the DOC originally projected that Duncan's conditional-release term would expire in August 2016—nearly 4 months before his supervised-release term was set to expire.

On August 18, 2011, the DOC released Duncan from prison on supervised release. As a condition of his supervised release, Duncan was required to secure approved housing—specifically, housing where no children were present. Because Duncan was unable to secure approved housing before his release, he was transported to the Stearns County jail where a hearing was held to determine whether he had violated the terms of his supervised release. A corrections agent testified that Duncan had been unable to secure approved housing, that there were no halfway houses available in Stearns County that would accept a level-three offender like Duncan, and that placing Duncan in a halfway house outside of Stearns County was not an option because other counties would not accept the placement.

The hearing officer found that Duncan had violated the terms of his supervised release, revoked his supervised release, and ordered Duncan returned to prison. *See* Minn. Stat. § 244.05, subd. 3(2) (2014) (providing that an inmate's supervised release may be revoked and that the inmate may be returned to prison if the inmate violates the terms of his supervised release). The hearing officer originally sentenced Duncan to spend up to 90 additional days in prison, with the understanding that Duncan and his corrections agent should use that time to arrange approved housing for Duncan and that Duncan could be released sooner if approved housing was found before the 90 days expired.

Duncan was not able to secure housing during the 90-day period. On December 5, 2011, another hearing was held to determine whether Duncan could be released. Because Duncan had not secured approved housing and there was no other housing available to Duncan in Stearns County, the hearing officer again sentenced Duncan to prison for 30 days or less in order to allow him to continue to search for approved housing.

This sequence of events occurred several times over the next few years. Duncan appeared at a series of hearings where the hearing officer found that Duncan had been unable to secure approved housing and various correctional officials testified that they were unable to place Duncan in government-funded housing due to the nature of his offense and the conditions placed on his supervised release.

In September 2012, the DOC contacted Duncan and informed him that it had recalculated the projected expiration date of his conditional-release term. The DOC explained that it was recalculating sentences for all inmates sentenced to conditional-release terms in light of two recent decisions from the court of appeals. Both *State ex rel.*

5

*Peterson v. Fabian*, 784 N.W.2d 843, 846 (Minn. App. 2010), and *State ex rel. Cote v. Roy*, No. A11-0727, Order Op. at 5-6 (Minn. App. filed Nov. 15, 2011), *rev. denied* (Jan. 25, 2012), held that an inmate's conditional-release term ran consecutively to, rather than concurrently with, the inmate's supervised-release term. As a result of the change from *Koperski* (concurrent calculation) to *Peterson* and *Cote* (consecutive calculation), the DOC explained to Duncan that his conditional-release term would begin after his supervised-release term concluded in 2016 and projected that his conditional-release term would expire in 2021. The DOC explained that Duncan would receive credit against his conditional-release term for each day that he served on supervised release. Thus, the DOC gave Duncan one day of credit against his conditional-release term because Duncan had been released into the community for one day before his supervised release was revoked. In other words, the DOC did not count any of the time Duncan had spent in prison after the DOC had revoked his supervised release as "time . . . served on supervised release" under Minn. Stat. § 609.109, subd. 7(a).

On September 25, 2014, Duncan filed a habeas petition in Chisago County, where he was being held.[2] The petition alleged that Duncan was being detained illegally because

---

[2]     Duncan filed a habeas petition in Washington County in August 2014, but the district court dismissed that petition when Duncan was moved to Chisago County a short time later.

Additionally, in 2012, Duncan filed a habeas petition in Chisago County, challenging the calculation of his conditional-release term. The district court denied that petition. The court of appeals in this case considered whether Duncan's 2014 petition challenging the calculation of his conditional-release term was barred by res judicata. The court of appeals concluded that it was not because the Commissioner did not raise res judicata as a defense before the district court and "the law has changed." *State ex rel. Duncan v. Roy*, No. A15-1349, 2015 WL 6830270, at *2 (Minn. App. Nov. 9, 2015). The

6

the DOC had been unable to find him housing and was unwilling to amend the terms of his supervised release so that he could find housing. Duncan's petition also claimed that the DOC's new method for calculating the expiration date of his conditional-release term was illegal because it did not give Duncan credit for the time he had spent in prison after the DOC had revoked his supervised release.

In November 2014, the DOC requested a continuance because it had set a tentative release date for Duncan and his release would moot several of his claims. On December 11, 2014, Duncan was released into the community after he was able to obtain approved housing.[3] At that time, Duncan had served just over 3 years of his supervised-release term in prison because he was unable to comply with the housing restrictions placed on him as a condition of his supervised release.

But Duncan's release did not resolve the issue of whether he was entitled to credit against his conditional-release term for the time he had spent in prison after the DOC revoked his supervised release. Duncan asked the district court to stay that claim pending the resolution of *State v. Ward*, 847 N.W.2d 29 (Minn. App. 2014), *rev. granted* (Minn. June 17, 2014) *and rev. denied* (Minn. Mar. 17, 2015). After we denied review in *Ward*, the district court held that Duncan was not entitled to credit against his conditional-release term for the time he had served in prison due to the revocation of his supervised release. Duncan appealed that ruling and the court of appeals affirmed, concluding that it was bound

---

Commissioner did not appeal this ruling and makes no argument regarding res judicata here. Thus, the issue is not before us.

[3] The DOC again revoked Duncan's supervised release in March 2015. Duncan is currently incarcerated.

by the decision in *Ward*. *State ex rel. Duncan v. Roy*, No. A15-1349, 2015 WL 6830270, at *3-4 (Minn. App. Nov. 9, 2015). Duncan then petitioned our court for review and, on appeal here, argues that because the plain language of the relevant statutes requires his supervised-release and conditional-release terms to run concurrently, *Ward* was wrongly decided.

II.

This case presents a question of statutory interpretation. Duncan's sentence included a mandatory conditional-release term of 5 years under Minn. Stat. § 609.109, subd. 7(a), which states: "[T]he court shall provide that after the [inmate] has completed the sentence imposed, the commissioner of corrections shall place the [inmate] on conditional release . . . for five years, *minus the time the person served on supervised release*." (Emphasis added.) Thus, the plain language of the statute directs the DOC to reduce a conditional-release term by the amount of time the offender "serve[s] on supervised release." *Id.*

Duncan argues that this phrase "time . . . served on supervised release" under Minn. Stat. § 609.109, subd. 7(a), includes the time he served in prison after the DOC revoked his supervised release. As a result, Duncan contends, he is entitled to credit against his conditional-release term for his entire supervised-release term, including the time he spent in prison. The DOC, by contrast, argues that "time . . . served on supervised release" under Minn. Stat. § 609.109, subd. 7(a), includes only the time that an inmate spends in the community on supervised release and does not include the time that an inmate spends in

8

prison after the DOC revokes supervised release. Thus, this case turns on the meaning of the phrase "time . . . served on supervised release" under Minn. Stat. § 609.109, subd. 7(a).[4]

Statutory interpretation presents a question of law, which we review de novo. *Harms v. Oak Meadows*, 619 N.W.2d 201, 202 (Minn. 2000). The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). When interpreting statutes, we "give words and phrases their plain and ordinary meaning." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010). "When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning without resorting to other principles of statutory interpretation." *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755 (Minn. 2013). Moreover, "whenever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant" by our interpretation of a

---

[4] Although we have not previously interpreted this specific provision, in *State v. Schnagl*, 859 N.W.2d 297 (Minn. 2015), we considered a factually similar case. In *Schnagl*, the inmate was a convicted sex offender who claimed that "his supervised-release term, whether served in custody or not, must be deducted from his 5-year conditional-release term." *Id*. at 299. But, rather than filing a habeas petition, the inmate brought his claim as a motion to correct his sentence under Minn. R. Crim. P. 27.03, subd. 9. *Schnagl*, 859 N.W.2d at 299-300. We ultimately decided that Minn. R. Crim. P. 27.03, subd. 9, was an inappropriate vehicle to challenge the DOC's administration of a sentence and denied the inmate's claim, clarifying that he should have brought a habeas petition to challenge the administration of his sentence. *Schnagl*, 859 N.W.2d at 303-04.

While *Schnagl* was pending before this court, the court of appeals decided another similar case, *State v. Ward*, 847 N.W.2d 29 (Minn. App. 2014). In *Ward*, the court of appeals addressed the merits of the inmate's argument, also brought in a Rule 27.03 motion, and determined that inmates are not entitled to credit against their conditional-release term for time spent in prison after the DOC has revoked their supervised release. 847 N.W.2d at 33-34. Although we originally granted review in *Ward* and stayed the appeal pending the decision in *Schnagl*, we ultimately vacated the stay and denied review after deciding *Schnagl*, without prejudice to the filing of a petition for a writ of habeas corpus. *State v. Ward*, No. A13-1433, Order (Minn. filed Mar. 17, 2015).

statute. *Owens v. Federated Mut. Implement & Hardware Ins. Co.*, 328 N.W.2d 162, 164 (Minn. 1983). If a statute is reasonably susceptible to more than one interpretation, it is ambiguous and we may resort to the canons of construction or legislative history to determine the intent of the Legislature. *See Lietz v. N. States Power Co.*, 718 N.W.2d 865, 870 (Minn. 2006).

Duncan relies on the overall statutory sentencing scheme for his argument that "time . . . served on supervised release" under Minn. Stat. § 609.109, subd. 7(a), includes time spent in prison after an inmate's supervised release has been revoked. Duncan notes that felony sentences in Minnesota generally have two parts: "(1) a specified minimum term of imprisonment that is equal to two-thirds of the executed sentence; and (2) a specified maximum supervised release term that is equal to one-third of the executed sentence." Minn. Stat. § 244.101, subd. 1; *see also State v. Schwartz*, 628 N.W.2d 134, 139 (Minn. 2001) (explaining that the time spent in prison as part of a criminal sentence "is presumptively equal to two-thirds of the executed sentence," with the remaining one-third "to be served as supervised release"). But "every inmate . . . shall serve a supervised release term upon completion of the inmate's term of imprisonment and any disciplinary confinement period imposed by the commissioner due to the inmate's violation of any disciplinary rule adopted by the commissioner." Minn. Stat. § 244.05, subd. 1b(a). Thus, the commencement of the supervised-release term depends on whether the Commissioner of Corrections has extended the inmate's term of imprisonment for any disciplinary infractions the inmate committed while incarcerated. *See id.* In other words, "[t]he amount

10

of time the inmate actually serves in prison and on supervised release" depends on when the initial period of imprisonment ends. Minn. Stat. § 244.101, subd. 1.

Based on this overall structure, Duncan argues that the plain language of section 244.05, subdivision 1b, demonstrates unambiguously that the "time the inmate serves on supervised release" is the period of time remaining in a sentence after the term of imprisonment is completed, as extended by any disciplinary violations. In other words, Duncan argues, the time served on supervised release does not depend on the inmate's *location* while serving that time; rather, the only information needed to calculate the conditional-release term is when the inmate's "term of imprisonment" has ended. We disagree.

Duncan's argument ignores the other provisions of section 244.05. Specifically, section 244.05, subdivision 3(2), gives the Commissioner of Corrections the power to "revoke the inmate's supervised release and reimprison the inmate for the appropriate period of time" whenever an inmate violates the terms of supervised release. *See also Schwartz*, 628 N.W.2d at 139 ("A person on supervised release remains in the state's legal custody and is subject to re-incarceration for breach of a condition of release."). Once an inmate's release has been revoked and the inmate has been returned to prison, the inmate is no longer on supervised release. *See State v. Wukawitz*, 662 N.W.2d 517, 523 (Minn. 2003) (explaining that the Legislature "adopted the description 'supervised release' to define the period of mandatory community supervision following imprisonment"); *see also*

11

Minn. Stat. § 244.01, subd. 7 (2014) (" 'Supervised release' means *the release* of an inmate pursuant to section 244.05." (emphasis added)).[5]

The plain meaning of the words "revoke" and "release" buttresses this conclusion. The word "revoke" is defined as "[t]o invalidate or cause to no longer be in effect, as by voiding or canceling." *The American Heritage Dictionary of the English Language* 1503 (5th ed. 2011). Thus, when the Commissioner revokes an inmate's supervised release, the Commissioner has "invalidated" the supervised release and "cause[d it] to no longer be in effect." *Id.* When an inmate's supervised release is no longer in effect, the inmate is not serving time "on supervised release" under Minn. Stat. § 609.109, subd. 7.

Similarly, the plain meaning of the word "release" further supports our conclusion. The word "release" is defined as "[t]o set free from confinement or bondage." *The American Heritage Dictionary of the English Language* 1483 (5th ed. 2011). When an inmate is on supervised release, he or she is "set free from confinement or bondage." *Id.* By contrast, when the DOC revokes an inmate's supervised release, the inmate is returned to prison. An inmate is not on supervised release when imprisoned because the inmate is not "free from confinement." *Id.* Instead, the inmate is incarcerated, which is not a form of release.

Additionally, as the DOC notes, if the Legislature intended for the entire supervised-release term to be deducted from an inmate's conditional-release term, it could have said

---

[5]     The DOC urges us to defer to its regulatory definition of the phrase "supervised release." *See* Minn. R. 2940.0100, subp. 31 (2015). Because we conclude that the plain and unambiguous language of Minn. Stat. § 609.109, subd. 7, resolves the legal question in this case, it is unnecessary to consider whether the DOC's regulation should receive deference.

so.  For example, the Legislature clearly provided that the conditional-release term for an individual convicted of driving while impaired (DWI) begins after that individual is released from prison.  *See* Minn. Stat. § 169A.276, subd. 1(d) (2014) ("[A]fter the person has been released from prison the commissioner shall place the person on conditional release for five years.").  The practical effect of this provision is that an inmate convicted of DWI serves a conditional-release term concurrently with a supervised-release term, without regard to whether the time is served in the community or in prison.  In other words, the DWI conditional-release statute is administered in the manner Duncan would like this court to interpret Minn. Stat. § 609.109, subd. 7.  That the Legislature used different language to describe the conditional-release terms for sex offenders and DWI offenders indicates that these provisions should be administered differently and further supports our interpretation of the plain words of the statute.  *See Dereje v. State*, 837 N.W.2d 714, 720 (Minn. 2013) ("[W]hen different words are used in the same context, we assume that the words have different meanings.").[6]

---

[6]     In 2013, the Legislature amended the statute governing conditional release for sex offenders by beginning the term only after the offender has been "released from prison." Act of May 24, 2013, ch. 96, § 3, 2013 Minn. Laws 743, 744 (codified at Minn. Stat. § 609.3455, subd. 6 (2014)).  At the same time, the Legislature clarified the terms of an offender's conditional release by explaining that an offender on supervised release "is not entitled to credit against the offender's conditional release term for time served in confinement for a violation of release."  Act of May 24, 2013, ch. 96, § 5, 2013 Minn. Laws 743, 745 (codified at Minn. Stat. § 609.3455, subd. 8(c) (2014)).  Because we conclude that the plain and unambiguous language of section 609.109, subdivision 7 (a predecessor statute to section 609.3455) resolves this appeal and because these amendments apply only to crimes committed on or after August 1, 2013, these amendments are not relevant to Duncan's case.

Duncan's alternative argument regarding the overall framework is that an inmate can be serving time only under either a term of imprisonment or a supervised-release term, not both.[7]  Duncan contends that any other interpretation extends or converts his sentence into one of "quasi-indeterminate" length.  As a result, Duncan argues that all of the time he served following the expiration of his term of imprisonment, whether in prison or otherwise, must be considered as time served "on supervised release" under Minn. Stat. § 609.109, subd. 7.  This argument has several flaws.

First, Duncan's sentence is not extended or made indeterminate by recognizing that re-imprisonment for supervised-release violations is not time served on supervised release.  Duncan's sentence at all times remained 196 months, a substantial portion of which he served in prison because he had "no right . . . to any specific, minimum length of a supervised release term."  Minn. Stat. § 244.101, subd. 3 (2014).  Further, Duncan's argument creates a false dichotomy.  Although it is true that Duncan may have been subject to the control of the DOC during his supervised-release term, it does not necessarily follow that every day of that term was time served on supervised release.  The Legislature expressly gave the DOC the power to revoke an inmate's supervised release, thereby

---

[7]     Duncan also urges us to apply the rule of lenity and interpret the statute in his favor.  But the rule of lenity should be used to resolve ambiguity in criminal statutes "when 'a grievous ambiguity or uncertainty in the statute' remains after [this court has] considered other canons of statutory construction."  *State v. Nelson*, 842 N.W.2d 433, 443 (Minn. 2014) (quoting *Dean v. United States*, 556 U.S. 568, 577 (2009)).  Here, the rule of lenity does not apply because we have determined that the relevant language in the statute is plain and unambiguous.

removing the inmate from supervised release during the supervised-release term and returning the inmate to prison. *See* Minn. Stat. § 244.05, subd. 3.

The language of Minn. Stat. § 609.109, subd. 7, and Minn. Stat § 244.05, subd. 3, is plain and unambiguous. When the DOC revokes an inmate's supervised release and returns the inmate to prison, that inmate is no longer serving time on supervised release. Rather, the inmate is imprisoned. Consequently, an inmate is not entitled to credit against a conditional-release term for any time the inmate spends in prison after the DOC has revoked the inmate's supervised release.[8] Duncan therefore is not entitled to any credit against his conditional-release term for the time he spent in prison after the DOC revoked his supervised release. Accordingly, the district court properly denied Duncan's petition for a writ of habeas corpus.

Affirmed.

CHUTICH, J., took no part in the consideration or decision of this case.

McKEIG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[8] The DOC argues more broadly that only time served by an inmate in the community while on supervised release should count as time served on supervised release. At oral argument, however, counsel for both parties discussed hypothetical situations in which an inmate could be incarcerated during the inmate's supervised-release term even though the inmate's supervised release has not been "revoked." In this case, it is unnecessary to determine whether an inmate who is incarcerated *never* can be serving time on supervised release or to determine that only time served in the community can count as time served on supervised release. We leave those questions for another case. Today, we simply hold that an inmate is not serving time on supervised release when the DOC has revoked the inmate's supervised release and the inmate is returned to prison.

15