ANDERSON, Justice.
Appellant Donald Heilman, a participant in the Challenge Incarceration Program administered by the Department of Corrections (Department), contends that he was "released from prison" within the meaning of Minn. Stat. § 169A.276, subd. 1(d) (2018), when he entered phase II of that program. Heilman asserts that, under the correct statutory analysis, the State failed to calculate his conditional-release term correctly and revoked his conditional release improperly after it had already ended.[1] The district court granted judgment on the pleadings to the State on Heilman's ensuing false-imprisonment and negligence claims, and the court of appeals affirmed. Heilman v. Courtney , 906 N.W.2d 521, 526 (Minn. App. 2017). We *390 reverse and remand to the court of appeals.
FACTS
On September 13, 2004, Heilman was sentenced to a stayed 51-month prison sentence for a conviction of first-degree driving while impaired (DWI). See Minn. Stat. § 169A.24 (2018). The district court also imposed a 5-year conditional-release term as required by law. See Minn. Stat. § 169A.276, subd. 1(d) ("[W]hen the court commits a person to the custody of the commissioner of corrections [for first-degree DWI], it shall provide that after the person has been released from prison the commissioner shall place the person on conditional release for five years."). Following a probation revocation hearing, Heilman's prison sentence was executed on May 22, 2007.
In December 2007, Heilman entered the Department's Challenge Incarceration Program (Program). See Minn. Stat. §§ 244.17 -.173 (2018). The Program consists of three statutory phases. See Minn. Stat. § 244.172 (laying out phases). Phase I, commonly called "boot camp," restricts participants to confinement "at the Minnesota Correctional Facility - Willow River/Moose Lake or the Minnesota Correctional Facility - Togo[.]" Id. , subd. 1. While confined, phase I participants receive "[i]ntensive instruction in military drill and ceremony, military bearing, customs, and courtesy." Minn. Dep't of Corr., Policies, Directives and Instructions Manual , Policy 204.060, at (C)(4) (Nov. 7, 2017) [opinion attachment]. They also participate in chemical-dependency-treatment programs and work programs. Minn. Stat. § 244.172, subd. 1.
Heilman finished phase I boot camp in July 2008 and entered phase II of the Program, which allowed him to live at his home. Though at his home, Heilman remained subject to "intensive supervision and surveillance." Minn. Stat. § 244.172, subd. 2. The Department characterizes a phase II participant as committed to "house arrest." Minn. Dep't of Corr., Policies, Directives and Instructions Manual , Division Directive 204.061, at (J)(4) (July 26, 2016) [opinion attachment]. The phase II participant is subject to random drug testing. Minn. Stat. § 244.172, subd. 2. Department agents "must have reasonable access to the offender's residence on an ongoing basis." Division Directive 204.061, at (J)(2). "Access may occur any time of the day or night." Id. A phase II participant has limited social time. See id. at (J)(4) (allowing more social time as progress is made through phases II and III). The Department sets a curfew, limits visitors, and must preapprove social activities, including religious worship. Id. at (J)(4)-(6). Much of the participant's phase II time must be spent engaging in "constructive activity." See id. at (J)(7) ("All offenders must spend a minimum of 40 hours weekly in pre-approved constructive activity which includes employment, employment-seeking, education, treatment, Sentencing to Service, or community service work.").
Heilman moved to North Branch as he entered phase II. During the subsequent 18 months, Heilman secured work with several employers. He progressed from phase II to phase III in January 2009. Had Heilman successfully completed phase III, he would have been "placed on supervised release for the remainder of the sentence." See Minn. Stat. § 244.172, subd. 3. But, in April 2009, the Department returned him to phase II because he failed to remain sober. A few months later, Heilman again failed to remain sober. The Department then revoked his conditional release and ordered his return to custody.
On December 27, 2010, the Department released Heilman. By this date, Heilman *391 had served two-thirds of his original 51-month sentence, the statutorily required minimum "term of imprisonment." See Minn. Stat. § 244.101, subd. 1 (2018). The parties stipulated that Heilman began his supervised release on this date.
On March 12, 2014, Heilman was arrested for failing to complete inpatient chemical dependency treatment. On March 25, the Department held a hearing and revoked Heilman's release for 180 days from the date of arrest, but the Department then released Heilman on May 14. Why the Department released Heilman 50 days after this hearing, and 63 days after his arrest, is not clear from the record.
In July 2016, Heilman filed a complaint against Courtney, the Department's program manager, asserting claims against the State for negligence and false imprisonment. His complaint alleged the following:
• "By law, the conditional release period began after the plaintiff was released from prison."
• "Plaintiff was released from prison on July 9, 2008, to the Challenge Incarceration Program (also know[n] as 'Boot Camp.')."
• "Release to the boot camp program triggers the start of the conditional release period."
• "Five years from July 2008 is July 2013."
• "The plaintiff's conditional release period therefore expired sometime in July of 2013."
• "In the plaintiff's case, he was imprisoned until May of 2014-nearly a year beyond his lawful sentence."
Heilman asserts, consequently, that he had served his conditional-release term, and his incarceration for approximately 60 days in March, April, and May 2014 was not authorized by law.
The district court granted the State's motion for judgment on the pleadings and dismissed Heilman's claims with prejudice, concluding that Heilman failed to establish that the State intentionally caused his confinement beyond his release date or owed him a duty. Additionally, the district court held that Heilman's confinement was legally justifiable, which is a defense to a claim of false imprisonment, and that Heilman's common-law claims were barred by Heck v. Humphrey , 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (holding that actions under 42 U.S.C. § 1983 that necessarily invalidate the existence or duration of a sentence are not cognizable).
Heilman appealed the dismissal of his negligence and false-imprisonment claims. Concluding that Heilman's conditional release was properly revoked, the court of appeals affirmed. Heilman , 906 N.W.2d at 526. The court first reclassified the district court's order as a grant of summary judgment because the parties relied on documents outside the pleadings. See id. at 524. The court then turned to Minn. Stat. § 169A.276, subd. 1(d), and in particular the meaning of "released from prison." The court analogized the Challenge Incarceration Program to work release, another program administered by the Department. Heilman , 906 N.W.2d at 525 ; see Minn. Stat. § 241.26 (2018). It "rejected the idea that simply leaving the confines of a correctional facility constitutes a 'release from prison,' and concluded that the physical location of the inmate is not determinative." Heilman , 906 N.W.2d at 525 (citing State ex rel. Huseby v. Roy , 903 N.W.2d 633, 636-38 (Minn. App. 2017), petition for rev. dismissed as moot (Minn. Dec. 27, 2017)). The court relied on its own precedent that held that " 'both conditional release and supervised release are mandated to begin at the same time, i.e., the offender's release from prison.' " Id. (quoting *392 Maiers v. Roy , 847 N.W.2d 524, 530 (Minn. App. 2014), rev. denied (Minn. Aug. 19, 2014)). Based on the parties' stipulation that Heilman's supervised release began in December 2010, the court concluded that his "conditional-release term also commenced in December 2010[.]" Id . Then, because "appellant's conditional-release term did not expire until December 2015, and appellant's reincarceration between March and May of 2014 was lawful," it affirmed. Id. at 526.
Heilman petitioned for review, which we granted.
ANALYSIS
We are presented with two issues. First, did the court of appeals err when it affirmed the legality of Heilman's 2014 incarceration by interpreting Minn. Stat. § 169A.276, subd. 1(d) ? Second, does a Challenge Incarceration Program participant begin a conditional-release term under Minn. Stat. § 169A.276, subd. 1(d), when entering phase II of the Program?
I.
We first address whether the court of appeals erred by interpreting Minn. Stat. § 169A.276, subd. 1(d), "sua sponte." Heilman claims that the court of appeals "sua sponte engaged in statutory interpretation of Minn. Stat. § 169A.276, subd. 1(d) to dispose of the case, even though the interpretation of Minn. Stat. § 169A.276, subd. 1(d) was not at issue below."[2] In assigning error, he cites Thiele v. Stich , 425 N.W.2d 580 (Minn. 1988), and State v. Morse , 878 N.W.2d 499 (Minn. 2016). The State agrees that the court of appeals' statutory interpretation was undertaken sua sponte, because the court did not address the reasoning of the district court. But relying on Minn. R. Civ. App. P. 103.04 and State v. Vasko , 889 N.W.2d 551 (Minn. 2017), the State argues that the decision to do so was in the interest of justice.
This issue presents a legal question regarding procedural rules, so our standard of review is de novo. Crowley v. Meyer , 897 N.W.2d 288, 292 (Minn. 2017). Minnesota Rule of Civil Appellate Procedure 103.04 states: "[A]ppellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require." We have also said that a "reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." Thiele , 425 N.W.2d at 582 (citation omitted) (internal quotation marks omitted).
We begin with the observation that, in the district court proceedings, Heilman offered little in the way of legal authority supporting his argument. But in addition to accurate, if implied, references in his complaint to the statute setting out that his conditional-release term began after he was "released from prison," Heilman made the common-sense argument that the Department released him early because it recognized that he was not being lawfully held. The State does not contend that it did not understand the argument that Heilman made at the district court. Heilman's argument that he was wrongly detained by the State is based on a plain reading of the statute and is not complicated. See Minn. Stat. § 169A.276, subd. 1(d)
*393 (stating that "after the person has been released from prison the commissioner shall place the person on conditional release for five years" (emphasis added)). It is true that Heilman did not cite the statute that we hold today supports this theory, but the State did cite the statute in its answer. Although the statutory argument could have been better developed and supported, Heilman's claim was presented, considered, and disposed of by the district court and is properly before our court.[3]
II.
Now, we turn to the specific issue presented by this appeal: when did Heilman's conditional-release term begin? The court of appeals concluded that Heilman's conditional-release term began at the same time as his supervised-release term. Heilman , 906 N.W.2d at 525. Heilman argues that the conditional release imposed by Minn. Stat. § 169A.276, subd. 1(d), begins when a Challenge Incarceration Program participant enters phase II of the Program. Heilman's argument is based on the plain meaning of "release," which we defined in State ex rel. Duncan v. Roy , 887 N.W.2d 271 (Minn. 2016).
The State disagrees with the analyses of both Heilman and the court of appeals. The State asserts that we should find the relevant statutes ambiguous as applied to the Program. It asserts that the Department, in spring 2014, came to the conclusion that the language "released from prison" was ambiguous as applied to Program participants, and as part of a risk management assessment, it decided to "err on the side of under-incarceration." This unwritten policy change, the State explains, coincides with Heilman's reincarceration and early release.
To begin, we note that the court of appeals properly treated the State's motion for judgment on the pleadings as a summary judgment motion, based on the parties' decision to present matters to the court outside the pleadings. See Heilman , 906 N.W.2d at 524 ; Minn. R. Civ. P. 12.03. On appeal from summary judgment, we ask whether there are any genuine disputes of material fact and whether the lower courts erred in their application of the law. See N. States Power Co. v. Minn. Metro. Council , 684 N.W.2d 485, 491 (Minn. 2004). Statutory interpretation issues are reviewed de novo. See Harms v. Oak Meadows , 619 N.W.2d 201, 202 (Minn. 2000).
*394 The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2018). "When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning without resorting to other principles of statutory interpretation." City of Brainerd v. Brainerd Invs. P'ship , 827 N.W.2d 752, 755 (Minn. 2013).
Several statutes are relevant here, and we consider those statutes by moving from the general to the specific. Under Minnesota's sentencing scheme, felons generally serve sentences in two parts: "(1) a specified minimum term of imprisonment that is equal to two-thirds of the executed sentence; and (2) a specified maximum supervised release term that is equal to one-third of the executed sentence." Minn. Stat. § 244.101, subd. 1 (emphases added). " 'Term of imprisonment' ... is the period of time equal to two-thirds of the inmate's executed sentence." Minn. Stat. § 244.01, subd. 8 (2018). "Supervised release" begins when the felon completes his or her "term of imprisonment." See Minn. Stat. § 244.05, subd. 1b(a) (2018) (stating that offenders "shall serve a supervised release term upon completion of the inmate's term of imprisonment and any disciplinary confinement period imposed by the commissioner due to the inmate's violation of any disciplinary rule").
Thus, supervised release occurs with most felony sentences, but an additional period of release-"conditional release"-is specifically imposed for certain classes of offenders. For example, certain sex offenders receive a mandatory 10-year conditional-release term; for others, a mandatory lifetime conditional-release term is imposed. See Minn. Stat. § 609.3455, subds. 6-7 (2018). "Functionally, conditional release is identical to supervised release." Duncan , 887 N.W.2d at 272 n.1. It is a period of supervision beyond the minimum term of imprisonment. Cf. Minn. R. 2940.0100, subp. 31 (2017) (defining "supervised release" as the "portion of a determinate sentence served by an inmate in the community under supervision and subject to prescribed rules").
Relevant here is the conditional-release term for first-degree DWI offenders. "[W]hen the court commits a person to the custody of the commissioner of corrections" for this offense, "it shall provide that after the person has been released from prison the commissioner shall place the person on conditional release for five years." Minn. Stat. § 169A.276, subd. 1(d).
We recently defined the plain meaning of "release" as " 'to set free from confinement or bondage.' " Duncan , 887 N.W.2d at 277 (quoting The American Heritage Dictionary of the English Language 1483 (5th ed. 2011)). Thus, "[w]hen an inmate is on supervised release, he or she is 'set free from confinement or bondage.' " Id. In Duncan , we held that a person whose supervised release had been revoked, and who was returned to prison as a result, was not serving supervised "release" because confinement in prison is not a form of "release." See id. at 278 (concluding that the time imprisoned would not serve as credit against a conditional-release term under the former sex offender conditional-release statute, Minn. Stat. § 609.109, subd. 7(a) (2004) ). The same word, "release," is used in Minn. Stat. § 169A.276, subd. 1(d). The word has the same plain meaning. Conditional release for a DWI offense begins "after the person has been released from prison," which means DWI conditional release begins when a person is "set free from confinement"-specifically, set free "from prison."
*395 This plain meaning is consistent with the structure of the Challenge Incarceration Program. Confinement is specifically required for phase I Program participants. See Minn. Stat. § 244.172, subd. 1 ("The offender must be confined at the Minnesota Correctional Facility - Willow River/Moose Lake or the Minnesota Correctional Facility - Togo ...." (emphasis added)). In contrast, confinement is not required for phase II participants. They live in the community, and although they are subject to "intense supervision and surveillance" and "house arrest" conditions, phase II participants are not held-are not confined-in a Minnesota Correctional Facility. To the contrary, they have just been released from a correctional facility-specifically, released "from prison." Minn. Stat. § 169A.276, subd. 1(d). Because they are "released from prison," they have certain freedoms, including social time, visitor privileges, and the ability to find work, receive an education, and worship in the community . These freedoms, even if burdened with Department preapproval requirements, are not available to phase II participants before they are released from prison confinement. We therefore hold that the conditional release imposed under Minn. Stat. § 169A.276, subd. 1(d), unambiguously begins when a Challenge Incarceration Program participant enters phase II and begins living in the community.[4]
The court of appeals reached a different conclusion for two reasons. We are not persuaded by either.
First, the court held that "supervised release and conditional release are necessarily concurrent ...." Heilman , 906 N.W.2d at 525. In support, the court relied on Maiers v. Roy , 847 N.W.2d 524, 530 (Minn. App. 2014), rev. denied (Minn. Aug. 19, 2014). See Heilman , 906 N.W.2d at 525.
In Maiers , a felon on supervised release violated the terms of release and argued that this violation occurred only during his supervised-release term, not also during his DWI conditional-release term. 847 N.W.2d at 526-27. Thus, he reasoned, he could legally be reincarcerated for only the shorter remaining supervised-release term, not the full 5-year conditional-release term as the Department had decided. See id. at 529. The court of appeals rejected this argument:
*396 [B]oth conditional and supervised release are mandated to begin at the same time, i.e., the offender's release from prison. See Minn. Stat. § 169A.276, subd. 1(d) (conditional release); Minn. Stat. § 244.05, subd. 1b(a) (supervised release). Thus, they are necessarily concurrent until one of them expires.
Id. at 530.
The reasoning in Maiers is not applicable here. The DWI conditional-release term in question and supervised release under the Program are not "mandated to begin at the same time." Compare Minn. Stat. § 169A.276, subd. 1(d) (providing that DWI conditional release begins "after the person has been released from prison"), with Minn. Stat. § 244.172, subd. 3 ("If an offender successfully completes phase III of the challenge incarceration program before the offender's sentence expires, the offender shall be placed on supervised release for the remainder of the sentence."). Because the two release periods are not mandated to begin at the same statutory moment, they are not "necessarily concurrent." Therefore, we cannot agree that "[b]ecause an offender in the [Program] is not placed on supervised release until the offender 'successfully completes phase III,' an offender in the [Program] is not 'released from prison' until after completion of phase III." Heilman , 906 N.W.2d at 525 (citing Minn. Stat. § 244.172, subd. 3 ) (footnote omitted).[5]
Second, the court of appeals held that "the physical location of the inmate is not determinative." Id. It took this rule from State ex rel. Huseby v. Roy , 903 N.W.2d 633 (Minn. App. 2017), petition for rev. dismissed as moot (Minn. Dec. 27, 2017). Huseby , however, involved the interplay between work release and the DWI conditional-release statute. There are significant differences between work release and release under the Challenge Incarceration Program, including language in the work-release statute specifically stating that "[r]elease under this subdivision is an extension of the limits of confinement." Minn. Stat. § 241.26, subd. 1 (2018) ; see also Huseby , 903 N.W.2d at 637-38. Huseby , of course, is not binding on our court, but more importantly, the work-release program is not before us. It is sufficient for our purposes here to note that the differences between release under the Program and work release are substantial, not the least of which is that only phase I Program participants "must be confined." Minn. Stat. § 244.172, subd. 1.
Finally, the State disagrees with the analyses of both Heilman and the court of appeals. It argues that Minn. Stat. § 169A.276 is ambiguous as applied to the Challenge Incarceration Program and that it would be absurd to conclude that a felon could be "released" from prison for conditional-release purposes while still in the first, mandatory, two-thirds "minimum term of imprisonment." The problem with this argument, and the similar argument that Justice Lillehaug makes, is that the Challenge Incarceration Program is a specific exception to the general statutory scheme. Most felons may spend two-thirds of their sentence as their minimum term of imprisonment before the Department frees them from confinement and sends them into the community on release. Cf. State v. Wukawitz , 662 N.W.2d 517, 523 (Minn. 2003) ("The period of supervised release is typically one-third of the original pronounced sentence."). By legislative mandate, *397 however, Program participants are treated differently.[6]
We close with two additional observations relevant to our conclusion, beginning with the past position of the Department. When Heilman failed the Program in September 2009, a Department record specifically stated the following: "Disposition: Revoke conditional release as described below." (Emphasis added.) That the Department revoked Heilman's "conditional release" in 2009 implies that Heilman did not begin his conditional-release term in 2010, as the State and the dissent now argue. That which has not yet begun cannot be revoked.
Second, our plain language analysis fits with the voluntary nature of the Program. See Minn. Stat. § 244.17, subd. 1(a) (conditioning participation on an offender's agreement and signing of a written contract). The main advantage the Program offers inmates is early freedom. As Heilman describes, a felon who completes "boot camp" ends up "waking, walking, sleeping, eating, working, worshipping, contracting, and socializing" in the community, even if limited and supervised by the Department. The release may be limited, but that does not make it any less of a release. After all, the Department also limits the freedom of those on supervised release, see , e.g. , Minn. R. 2940.2000 - .2100 (2017) (describing standard and special conditions of supervised release), but supervised release is nevertheless "release," as we recognized in Duncan , 887 N.W.2d at 277 ("When an inmate is on supervised release, he or she is 'set free from confinement or bondage.' " (quoting The American Heritage Dictionary , supra , at 1483)). As Heilman persuasively points out, "that's the point of the [Program]-an early release from prison before the term of imprisonment *398 has expired." Presumably, felons understand this advantage, which is why they voluntarily choose to participate in the Program and its "boot camp."
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals and remand to the court of appeals for the court to address the remaining issues in this appeal.
Reversed and remanded.
Concurring, Hudson, J.
Dissenting, Lillehaug, McKeig, Thissen, JJ.
Dissenting, Thissen, J.
CONCURRENCE

Although respondent Patrick Courtney was named as a defendant in his individual capacity, it is undisputed that he was acting at all times in his capacity as an employee of the State of Minnesota.

Heilman also argues that he was denied due process and a right to be heard. But he also expressly concedes that any violation of his constitutional due-process rights has been remedied by his opportunity to brief the issue here, and the State agrees. We need not, and do not, address Heilman's due-process and right-to-be-heard claims. Cf. Day Masonry v. Indep. Sch. Dist. 347 , 781 N.W.2d 321, 327 n.7 (Minn. 2010).

Even if we concluded otherwise, the statutory interpretation by the court of appeals also fits squarely within an exception to the general Thiele rule:
[A]n appellate court may base its decision on a theory not presented to nor considered by the trial court where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits and where there is no possible advantage or disadvantage to either party in not having had a prior ruling on the question by the trial court.
Zip Sort, Inc. v. Comm'r of Revenue , 567 N.W.2d 34, 39 n.9 (Minn. 1997). We have also held that a decision on such an issue, on appeal, does not "disadvantage ... a party when the facts are undisputed." Id. Because the only fact necessary to the court of appeals' decision-when Heilman began his supervised-release term-was stipulated to, there was "no possible advantage or disadvantage to either party in not having had a prior ruling on the question by the trial court." Id.
Although other issues were briefed at the court of appeals, both parties agreed that the legality of Heilman's confinement was a decisive issue. The State stated in its brief to the court of appeals that Heilman's complaint was "fundamentally premised" on the invalidity of the decision to revoke Heilman's conditional release. And Heilman stated in his briefing to that court that whether he was "incarcerated beyond what the law allowed" was "the point of the lawsuit."

The dissent of Justice Lillehaug makes the point that house arrest is confinement. We agree. But "released from prison" is the decisive statutory phrase, not merely "released" in the abstract. Minn. Stat. § 169A.276, subd. 1(d). Even if Heilman was not "released" from confinement in an absolute sense when he reached phase II, he was "released" in the sense that matters for Minn. Stat. § 169A.276, subd. 1(d) -"released from prison."
We also agree with the dissent of Justice Lillehaug that Minn. Stat. § 244.085 (2018), which requires the Commissioner of Corrections to prepare an annual report relating to DWI offenders, including the number of offenders placed in the Program, Minn. Stat. § 244.085(5)(v), does not specify precisely when an offender is "released from prison." But as relevant here, the report must also include the number of offenders "placed on intensive supervision following release from incarceration ." Minn. Stat. § 244.085(5)(iv) (emphasis added).
This language suggests that an offender is "release[d] from incarceration" when "placed on intensive supervision." The Legislature expressly provided that phase II of the Program is "intensive supervision." Minn. Stat. § 244.172, subd. 2 (stating that "[p]hase II of the program lasts at least six months" and that "[t]he offender shall serve this phase of the offender's sentence in an intensive supervision and surveillance program established by the commissioner" (emphasis added)); cf. Minn. Stat. §§ 244.12 -.15 (2018) (creating "intensive community supervision," a program which, see section 244.15 in particular, is closely analogous to phase II of the Program).

Our general statement in Duncan that an "inmate convicted of DWI serves a conditional-release term concurrently with a supervised-release term, without regard to whether the time is served in the community or in prison," 887 N.W.2d at 277, should not be read to contravene instances, such as here, where a statute specifies otherwise.

The ambiguity analysis of Justice Lillehaug's dissent relies on the objectives of Minn. Stat. § 169A.276 to strengthen and make more uniform the penalties for serious DWI offenses. The dissent argues that our decision makes the statute less effective by giving some DWI offenders an early start on their conditional-release terms and less uniform by disconnecting those terms from supervised-release terms.
It is true that the result today is consistent with an early start for some offenders' conditional-release terms. But this early start is the result of the decision of the Legislature to create the Challenge Incarceration Program, which sends offenders back into the community after a boot camp program and effectively functions, as recognized by the court of appeals, as "an early-release program." Heilman , 906 N.W.2d at 524.
As for the lack of uniformity, it may be generally true that, as the dissent says, conditional-release terms and supervised-release terms are meant to be coordinated: "[C]onditional release is governed by provisions relating to supervised release." Minn. Stat. § 169A.276, subd. 1(d). But we also look to the immediately preceding statutory language that the dissent fails to consider: "Except as otherwise provided in this section , conditional release is governed by provisions relating to supervised release." Id. (emphasis added). The same section unambiguously provides when conditional release begins, and therefore our determination on this point is not governed by provisions relating to supervised release. The disconnect the dissent finds is a result of the plain language the Legislature chose to employ, not our decision.
Nor are we persuaded by the dissent's reliance on the title of the Program. Although a title of an act may be considered when construing an ambiguous statute, it is " 'not of decisive significance and may not be used to vary the plain import of a statute's explicit language within the scope of the title.' " Wukawitz , 662 N.W.2d at 527 n.8 (quoting La Bere v. Palmer , 232 Minn. 203, 44 N.W.2d 827, 829 (1950) ). We do not find the meaning of "released from prison" ambiguous and decline the opportunity for further construction. Minn. Stat. § 645.16 (2018) ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").