LILLEHAUG, Justice (dissenting).
Because there are two reasonable interpretations of Minn. Stat. § 169A.276, subd. 1(d) (2018), regarding when an offender is considered "released from prison," and because the court's interpretation is less reasonable than the court of appeals' interpretation, I respectfully dissent.
This case lies at the intersection of two statutes: one strengthening the law against driving while under the influence (DWI) by imposing mandatory penalties, Minn. Stat. § 169A.276, and the other governing the Challenge Incarceration Program, see Minn. Stat. §§ 244.17 -.173 (2018). The result turns on the meaning of a single statutory phrase about mandatory sentences for first-degree DWI: "[W]hen the court commits a person to the custody of the commissioner of corrections under this subdivision, it shall provide that after the person has been released from prison the commissioner shall place the person on conditional release for five years." Minn. Stat. § 169A.276, subd. 1(d) (emphasis added).
*401 The question is, what did the Legislature mean by the phrase "released from prison"? The court interprets the phrase to mean that a DWI offender who participates in the Challenge Incarceration Program is "released from prison" upon completing the Program's Phase I; that is, when the offender is no longer confined within a Minnesota Correctional Facility. In other words, one is "released from prison" when one is no longer housed within the four walls of what is commonly thought of as a "prison." I agree that this interpretation is reasonable.
But there is a second reasonable interpretation: the one adopted by the court of appeals. An offender is "released from prison" when the offender completes the term of imprisonment . "Term of imprisonment" has long been defined by the Legislature as two-thirds of the executed sentence. Minn. Stat. § 244.01, subd. 8 (2018). And the Legislature expressly incorporated that definition into the Challenge Incarceration Program statute. Minn. Stat. § 244.171, subd. 4 (" 'Term of imprisonment' means a time period equal to two-thirds of the sentence originally executed by the sentencing court, minus jail credit, if any."). It makes sense that, when an offender is no longer serving a "term of imprisonment," the offender is "released from prison." At that point, the offender is on "supervised release " and, for some offenses such as first-degree DWI, is also on "conditional release ."
"If a statute is reasonably susceptible to more than one interpretation, it is ambiguous and we may resort to the canons of construction or legislative history to determine the intent of the Legislature." State ex. rel. Duncan v. Roy , 887 N.W.2d 271, 276 (Minn. 2016). The court of appeals' reasonable interpretation is likely what the Legislature intended, for three reasons.
First, the court of appeals' interpretation better fits with the plain meaning of the statutory word "release." We defined that word in Duncan , concluding that an offender is "released" when "set free from confinement or bondage." Id . at 277. In Duncan , we recognized that that moment was when the term of supervised release began. In the Challenge Incarceration Program, supervised release begins, not at the end of Phase I, but only when all three Phases of the Program have been completed successfully. Minn. Stat. § 244.172, subd. 3.
Second, as its title announces, offenders in the Challenge Incarceration Program are incarcerated. One who is "incarcerated" is not free from confinement or bondage. See The American Heritage Dictionary of the English Language 887 (5th ed. 2011) (defining incarcerate as "[t]o shut in; confine" as well as "[t]o put in a prison or jail"). After the offender completes Phase I, the offender is still "committed to the commissioner's custody," Minn. Stat. § 244.17, subd. 2(a), even if no longer confined in a Minnesota Correctional Facility.
I doubt that offenders in Phase II of the Challenge Incarceration Program consider themselves "free from confinement or bondage." As the court acknowledges, such offenders are basically under "house arrest," subject to intensive supervision and surveillance, daily reporting, drug tests without notice, and any other requirements imposed by the commissioner. Minn. Stat. § 244.172, subd. 2. House arrest is confinement. The Legislature has told us so, in a statute governing work release, another corrections alternative. Work release is "an extension of the limits of confinement." Minn. Stat. § 241.26, subd. 1 (2018). Among those still confined are offenders under "house arrest ... monitored by electronic surveillance in an approved *402 residence." Minn. Stat. § 241.26, subd. 2 (2018).[1]
Third, the court of appeals' interpretation better promotes the objective of section 169A.276 : to remedy a serious, repeated DWI problem by establishing mandatory penalties for felony violations. See Minn. Stat. § 645.16 (2018) (noting that "the intention of the legislature may be ascertained by considering," inter alia , "the occasion and necessity for the law," "the mischief to be remedied," and "the object to be attained"). Subdivision 1(a) of section 169A.276 requires imprisonment for not less than three years for a first-degree DWI offender. Subdivision 1(d) requires an additional conditional release term of five years. The obvious goal of the statute is to strengthen and make more uniform the penalties for serious DWI offenses. The statute also signals that conditional-release terms and supervised-release terms are coordinated: "conditional release is governed by provisions relating to supervised release." Minn. Stat. § 169A.276, subd. 1(d). As we noted in Duncan , the practical effect of subdivision 1(d) "is that an inmate convicted of DWI serves a conditional-release term concurrently with a supervised-release term ...." 887 N.W.2d at 277.
The court's interpretation makes the statute less effective and uniform. It gives some first-degree DWI offenders an early start on their conditional-release terms and disconnects those terms from the supervised-release terms. This discrepancy undermines the system of mandatory penalties the Legislature enacted to remedy a serious problem.[2]
For all of these reasons, the court of appeals' reasonable interpretation of the statute is better aligned with the Legislature's intent. Therefore, I respectfully dissent from the court's conclusion that a first-degree DWI offender is "released from prison" upon completion of Phase I of the Challenge Incarceration Program. I would affirm the decision of the court of appeals.

I agree with the court that work release and the Challenge Incarceration Program differ in important respects. But in at least one important respect-the meaning of release, as opposed to confinement-the programs are sufficiently similar.

Minnesota Statutes § 244.085(5)(v) (2018), the statute which requires the commissioner of corrections to submit an annual report on DWI offenders, also supports the court of appeals' interpretation. One portion of that statute deals expressly with the Challenge Incarceration Program. It requires the commissioner to state the number of such offenders "placed in the challenge incarceration program, the number of offenders released from prison under this program, and the number of these offenders who violate their release conditions and the consequences imposed ...." Id. The statute does not specify precisely when an offender is "released from prison." But its reference to violations of "release conditions" probably refers to violations of conditional-release and supervised-release conditions. The Challenge Incarceration Program statute refers to commissioner "requirements," not "release conditions." Minn. Stat. § 244.17, subd. 1.